1999 OK 20

Benny Ray SALAZAR,
Appellant/Plaintiff,

v.

The CITY OF OKLAHOMA CITY,
Appellee/Defendant,

Oklahoma City Police Department,
Defendant.

No. 88,987

Supreme Court of Oklahoma.

March 16, 1999.

Laura A. Shaeffer, Shaeffer & Shaeffer, Norman, Oklahoma for Appellant.

Richard Mann, Assistant Municipal Counselor, Oklahoma City, Oklahoma for Appellee.

OPALA, J.

¶1 The dispositive issue on certiorari is whether the trial court erred in giving summary judgment to Oklahoma City [City]. We answer in the affirmative and *reverse*. The trial judge's ruling on City's issue-preclusion defense cannot be sustained. It rests on an inadequate record of the earlier federal-court action. The cause is accordingly remanded (a) for *comprehensive reappraisal* in light of the federal court's *entire* judgment roll and (b) for re-examination of the tendered immunity issues upon an analysis we offer today.

I

**THE ANATOMY OF LITIGATION**

¶2 On 11 December 1992 school officials reported to the Oklahoma City Police Department [OCPD] that an eleven-year-old girl was being molested. The victim identified the man as "Benny Salazar," who rented a room at her mother's residence. The suspect was described as a Mexican male, approximately 43 years of age, with brown hair, brown eyes and full, thick facial hair. He was also described as self-employed, weighing about 200 pounds and having a height of 6 feet and 2 inches.

¶3 The investigating officer, Detective Pat Mauldin [Mauldin], searched Department records and found in them two individuals named "Benny Salazar." One was "Benny Ray Salazar," who had a previous conviction for a sex crime. Mauldin assumed the two names were borne by the same individual. He did not check any other source to verify his conclusion. The victim's mother con-

firmed that the suspect used the name "Benny" or "Ray" during the months he lived with them.

¶4 A warrant was issued on the strength of this information for the arrest of "Benny Ray Salazar." The Plaintiff, Benny Ray Salazar [Salazar], was arrested at his place of employment on 25 June 1993. His apprehension took place in front of other employees and patrons of the business. He was handcuffed and taken to jail, where he spent Friday, Saturday and Sunday. Although he protested his innocence, the authorities did not seem to believe him. Based on the vehemence of his assertions, Sergeant Marta Gilson [Gilson] of the Oklahoma County Detention Center checked county sheriff's records and found that there were two "Benny Salazars," one of whom, a "Benny Joe Salazar", had earlier been detained in the County Detention Center. By checking further, Gilson discovered the person named "Benny Joe Salazar" had fingerprints different from those of the arrestee-plaintiff and was listed at the same residence address as the victim and her mother.

¶5 Gilson then informed Mauldin of her findings, but the latter told her that he knew of the existence of two "Benny Salazars" and was sure he had caused a warrant to be issued for the right man. Three days after Salazar's arrest, it was learned with certainty on Monday that the police had mistakenly arrested the wrong man. The accused child molester was one Benny Joe Salazar. The plaintiff, Salazar, was then released.

¶6 Salazar filed a federal-court civil rights action against City and the investigating officer. The United States District Court for the Western District of Oklahoma (Judge Russell) gave *summary judgment* to both defendants, ruling that (a) the uncontroverted probative support in the record established probable cause for the issuance of the arrest warrant, and (b) there was no violation of Salazar's federal constitutional rights ei-

ther in effecting the arrest or in his ensuing weekend detention. *The court added that, at the most, the investigating officer's behavior could amount to negligence. Judge Russell explicitly declined to exercise pendent jurisdiction over Salazar's state-law claims. These were dismissed otherwise than on the merits.*

¶7 Following the federal-court decision Salazar brought a state-law tort action against City and the OCPD based on the same facts. OCPD *was dismissed as a party defendant.* Its dismissal is not challenged here. *City received summary relief upon its combined defenses of issue preclusion and statutory immunity.* The Court of Civil Appeals [COCA] affirmed the judgment, holding that (a)"collateral estoppel" should apply to Salazar's state-law claims because he had the opportunity, but failed, to controvert material facts in his response to City's motion for summary judgment; (b) the federal court's decision (based on briefs only and *sans* consideration of Salazar's untimely-submitted expert testimony) raised no significant procedural impediments to affording Salazar a fair opportunity to litigate his case; (c) City is immune from liability when a lawful court order issues and is executed for the arrest of a person and (d) City's immunity extends to the plaintiff's negligence-based allegations of overlong detention. Salazar now seeks this court's certiorari review of the COCA opinion.[1]

## II

## CITY'S ISSUE–PRECLUSION DEFENSES ARE UNSUPPORTED BY THIS RECORD

¶8 City argues that Judge Russell's ruling resolved *all* the fact and law issues tendered in the state-law tort action and claims that *Salazar is precluded from relitigating all of them.* According to City's argument, which is founded solely on issue preclusion,[2]

1. Although both parties were invited to submit simultaneous briefs on certiorari, only the plaintiff responded.

2. While City's preclusion argument (in its *answer* below) was based on "res judicata" (claim preclusion), its summary judgment brief interposes

merely "collateral estoppel" (issue preclusion). We will consider City's answer to have been amended by the more narrowly focused defenses pressed later by the motion for summary judgment.

the federal court (a) has determined that the warrant for Salazar's arrest was supported by probable cause and (b) has resolved in favor of City all issues that deal with alleged intentional acts. *City concedes that Salazar's only remaining claim lies in negligence.*

¶ 9 Salazar denies that the invoked preclusion bar extends to any of the issues pressed in his state-law litigation. He urges that Judge Russell's ruling, which gave summary judgment to City on all of the issues in his § 1983 [3] civil rights claim, was based on a stricter constitutional standard than that which applies to his state-law cause of action in tort. Because the earlier state-law claim was *dismissed by the federal court without prejudice,*[4] Salazar argues, he is not barred from now resubmitting that claim to a state court.

### A.

### City's Defense Of Issue Preclusion

¶ 10 Under the doctrine of issue preclusion,[5] once a court has decided an issue of fact or of law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim.[6] Issue preclusion may apply when the party to be precluded has had a "full and fair opportunity" to litigate the issue that was adversely resolved.[7] *The party relying on the defense of issue preclusion bears the burden of establishing that the issue to be precluded was actually litigated and determined in the prior action between the parties or their privies, and that its resolution was essential to a decision in that*

---

3. 42 U.S.C. § 1983

4. According to the text of Judge Russell's ruling, the state-law claims were dismissed pursuant to 28 U.S.C. § 1367(c)(3). Its terms provide:

 "(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [pendent state-law claim] if—
 * * *
 (3) the district court has dismissed all claims over which it has original jurisdiction"
"Pendent jurisdiction," originally a case-law doctrine, was carried into federal statutory law as "supplemental" federal-court cognizance in 28 U.S.C. § 1367, part of the Judicial Improvements Act of 1990 (Pub.L.101–650). *Tate v. Browning-Ferris, Inc.,* 1992 OK 72, 833 P.2d 1218, 1220 n. 2.

5. The use of the more descriptive term "issue preclusion" was first advanced in the works of Professor Allan D. Vestal: (a) RES JUDICATA/PRECLUSION, PERSONAL INJURY ANNUAL (1969); (b) Res Judicata/Preclusion: Expansion, 47 S. CAL L. REV. 357 (1974); (c) *State Court Judgment as Preclusive in Section 1983 Litigation in a Federal Court,* 27 OKLA. L. REV. 185 (1974)[hereinafter Vestal, *State Court Judgment*]. *The term was later adopted by* RESTATEMENT (SECOND) OF JUDGMENTS § 27, Comment b (1982); *Underside v. Lathrop,* 1982 OK 57, ¶ 6, n. 8, 645 P.2d 514, 517, n. 8; *Veiser v. Armstrong,* 1984 OK 61, ¶ 8, n. 7, 688 P.2d 796, 800 n. 7.

6. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.,* 1997 OK 36, ¶ 9, 946 P.2d 662, 666; *Chambers v. City of Ada,* 1995 OK 24, ¶ 9, n. 5, 894 P.2d 1068, 1072, n. 5; *Wilson v. Kane,* 1993 OK 65, ¶ 8, n. 23, 852 P.2d 717, 722,

n. 23; *Veiser, supra* note 5, at ¶ 8, n. 9, at 800 n. 9. *See also, Robinson v. Volkswagenwerk AG,* 56 F.3d 1268, 1272 n. 2 (10th Cir.1995); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim").

7. *National Diversified, supra* note 6, at ¶ 11, at 667; *Fent v. Okla.Nat. Gas,* 1994 OK 108, ¶ 15, 898 P.2d 126, 133; *Underside, supra* note 5 at 516, n. 6; *Veiser, supra* note 5, ¶ 16, n. 21, at 800 n. 21; *Vestal, State Court Judgment, supra* note 5, at 187.

The circumstances to which consideration should be given in determining whether a party has had a full and fair opportunity to litigate an issue in a prior action are set forth in the RESTATEMENT (SECOND) OF JUDGMENTS § 28, which states:
 . . .
 "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
 (5) There is a clear and convincing need for a new determination of the issue . . . (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action."

*action.*[8]

## B.

### City's Argument For Preclusion As A Bar To The Entire State–Law Claim Must Be Rejected For Its Failure To Present Below And To Incorporate Into The Record For Appeal A Complete Judgment Roll From The Earlier Federal–Court Action

¶ 11 While an appellate court can take judicial notice *of its own records* in litigation interconnected with a case before it,[9] it cannot take judicial notice *of records in other courts.*[10] Those who rely on a judgment for its issue-preclusive force (or for any other consequence consistent with an earlier adjudication's legal efficacy) are duty-bound to produce—as proof of its terms, effect and

validity—the *entire* judgment roll[11] for the case which culminated in the decision invoked as a bar to relitigation.[12]

¶ 12 We accord a federal-court judgment the very same effect as that which we must give to a sister-state judgment under the full-faith-and-credit command of the U.S. Constitution.[13] Any controversy over the meaning and preclusive force to be accorded Judge Russell's ruling must be resolved by *resort solely to the face of the judgment roll in the federal-court action.*[14] The federal court's judgment roll was essential to City's success *in securing* summary relief in Salazar's state-court action.[15] *Because City relies on that judgment for its preclusion defense, it was its burden to produce below the entire judgment roll from the federal-court action.*[16] Without that roll no

---

**8.** *Carris v. John R. Thomas & Associates, P.C.,* 1995 OK 33, 896 P.2d 522, 528; *Anderson v. Falcon Drilling Co.,* 1985 OK 13, 695 P.2d 521, 526.

**9.** *Matter of C.A.D.,* 1992 OK 89, 839 P.2d 165, 169 n. 10; *Reeves v. Agee,* 1989 OK 25, 769 P.2d 745, 756 n. 40; *Chandler v. Denton,* 1987 OK 38, 741 P.2d 855, 861–62; *Timmons v. Royal Globe Ins. Co.,* 1985 OK 76, 713 P.2d 589, 592 n. 10.

**10.** *Ouellette v. State Farm Mut. Auto. Ins. Co.,* 1994 OK 79, 918 P.2d 1363, 1367 n. 25; *Reeves, supra* note 9 at 752 n. 17; *Sooner Federal Savings & Loan Ass'n v. Mobley,* 1981 OK 124, 645 P.2d 1000, 1004 (courts generally do not take judicial notice of proceedings pending in another cause in a different court) (citing *Austin v. State Board of Education,* 1972 OK 55, 497 P.2d 218, 220); *see also Fibikowski v. Fibikowski,* 185 Okl. 520, 94 P.2d 921, 926 (1939) (a trial court cannot take judicial notice of the record in cases brought in another court); *Marlow v. American Suzuki Motor Corp.,* 222 Ill.App.3d 722, 165 Ill.Dec. 166, 584 N.E.2d 345, 348 (1991) (generally, an appellate court will not take judicial notice of a record in another court unless it is incorporated in the proceedings before it).

**11.** The terms of 12 O.S.1991 § 32.1 provide in pertinent part:

"The record [synonymous with 'record proper' and 'judgment roll'] shall be made up from the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court...."

**12.** When an issue (or claim) is sought to be barred by an earlier judgment in another case, the party relying on the adjudication *dehors* the case then before the trial court must secure ad-

mission (for the record on appeal) of the entire judgment roll (or record proper) in the other case. *Ouellette, supra* note 10 at 1367 n. 25. *This rule applies whether a favorable decision on the point is sought by summary relief or by trial.* For an explanation of how counsel should proceed to secure the incorporation of another action's judgment roll, see *Eckel v. Adair,* 1984 OK 86, 698 P.2d 921, 924.

**13.** When a federal-court judgment is attacked collaterally in a state court, it is entitled to the same faith and credit as that given to it under the applicable federal law *Veiser, supra* note 5 at 799 n. 5.

**14.** U.S. Const., Art. IV, § 1. The legal effect of a finally adjudicated case is measured by the four corners of its judgment roll. *Ouellette, supra* note 10 at 1367 n. 25; *Dyke v. Saint Francis Hospital, Inc.,* 1993 OK 114, 861 P.2d 295, 303 n. 27; *Willard v. Kelley,* 1990 OK 127, 803 P.2d 1124, 1134 n. 32; *Chandler, supra* note 9 at 861; *Reeves, supra* note 9 at 752; *Timmons, supra* note 9 at 592; *Mayhue v. Mayhue,* 1985 OK 68, 706 P.2d 890, 895.

**15.** *Salazar does not need the federal-court judgment roll to press his claims.* He only bears the responsibility for incorporating into the record for appeal those materials which he needs for *corrective relief in his favor. Davidson v. Gregory,* 1989 OK 87, 780 P.2d 679, 682.

**16.** *Ouellette, supra* note 10 at 1367 n. 25. For the breadth of summary relief City sought, *its probative support was microscopic.* Tendered with its motion were only these probative materials: (1) Judge Russell's memorandum opinion and order; (2) warrant for Salazar's arrest; and (3) Salazar's amended petition in the state-law action.

court can determine with the requisite degree of certainty (1) what claims were pressed for adjudication and (2) which of the tendered issues were actually decided. *As explained below, the federal-court roll's absence clearly is fatal to City's issue-preclusion defense.*

## C.

### The Federal–Court Judgment

¶ 13 From the text of Judge Russell's ruling, we divine that Salazar's federal action was considered as divided into two parts— that which is related to his arrest and immediate detention and that which pertains to his ensuing three-day confinement. The former addressed the presence of federal constitutional infirmities in the arrest process and in the restraint that followed; the latter the reasonable length of post-arrest confinement that was viewed as measurable by City's exercise of that degree of care that was Salazar's due.

¶ 14 We will not pass on how much, if any, of the present state claim may be subject to preclusion. Moreover, it is not clear, on this record, which issues sought to be resolved in this state action City intended to bar by issue preclusion and which were relied upon as eliminated by City's immunity defense. At nisi prius City failed to identify with any modicum of precision the *exact* issues it sought to preclude by interposition of Judge Russell's rulings. We cannot pass on the preclusive force of those rulings without having the judgment roll. *The journal entry alone will not suffice.* When the roll is produced, arrest-related issues should be viewed separately from those that are detention-related. For the reasons to be explained in Part III *infra*, the latter (detention-related) issues that are rested on

negligence in taking unreasonable time to identify Salazar clearly present a disputed fact for the jury.

 ¶ 15 Among City's multiple preclusion arguments that *cannot be addressed absent a full federal-court judgment roll* are: (1) whether any intentional acts of City's employees are precluded, (2) whether Salazar had full and fair opportunity to litigate the critical issues of probable cause and (3) what standards were appropriate for separately gauging the Salazar-pressed federal- or state-law infirmities. There is an even greater barrier to today's pronouncement upon the breadth of the preclusive force. We do not initially decide issues that *were left unresolved by the first-instance court.*[17] Were we to assume that the judgment roll was supportive of some preclusive elements, we could not now extend the bar of that defense (a) *to* Salazar's state-law argument that he was negligently detained for longer than necessary to ascertain his identity (as one other than the person for whom the arrest warrant issued), or (b) *to* the intentional acts, if any, by City officials. On this record, both of these concerns appear to present state-law questions of fact which went untendered in the previous federal-court controversy.[18]

## D.

### The Federal Court's Use Of Baker v. McCollan [19]

 ¶ 16 Even assuming, as City argues, that issue preclusion avails on the probable-cause issue, summary judgment would not lie. Federal civil rights disputes brought under § 1983 do not afford protection against negligence in causing excessive restraint pending an arrestee's identification. *For the latter harm the state common law affords the only remedy.*[20]

---

17. When the record is devoid of showing that the nisi prius court did inquire into critical issues, the case must be remanded with directions that the trial court make the necessary examination. *Toxic Waste Impact Group, Inc. v. Leavitt,* 1995 OK 148, 890 P.2d 906, 913; *Dyke, supra* note 14 at 300 n. 13; *Teel v. Teel,* 1988 OK 151, 766 P.2d 994, 999 n. 19; *American Ins. Ass'n v. Indus. Com'n,* 1987 OK 107, 745 P.2d 737, 740 n. 15; *Sandpiper North Apartments v. American Nat. Bank,* 1984 OK 13, 680 P.2d 983, 993; *Matter of*

*Estate of Bartlett,* 1984 OK 9, 680 P.2d 369, 377; *Davis v. Gwaltney,* 1955 OK 362, 291 P.2d 820, 824.

18. *Nail v. City of Henryetta,* 1996 OK 12, 911 P.2d 914, 918.

19. 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979).

20. *Id.* 443 U.S. at 146, 99 S.Ct. at 2695–96.

¶ 17 According to Judge Russell's rulings, Salazar's redress for harm from his overlong detention is governed by *Baker v. McCollan.*[21] The plaintiff in *Baker* had been arrested pursuant to a facially valid warrant, then placed in custody and detained for three days. Although it was eventually determined that the plaintiff was innocent of the charge for which the warrant issued, there was no suggestion that the arrest itself was constitutionally deficient. The plaintiff's § 1983 action against the sheriff for depriving him of liberty without due process was based on the latter's failure *timely to institute identification procedures that would have discovered the error.*[22] The Court answered that "[r]espondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law." [23] Suggested to the Court was the notion that allegations of "simple negligence," actionable under state tort law, also would state a claim under § 1983.[24] Drawing a bright-line distinction between "violations of rights protected by the [U.S.] Constitution" and "violations of duties of care arising out of [state] tort law," [25] *the Court held that only federal constitutional violations are actionable under § 1983.*[26] *Baker's* claim for false imprisonment, the Court concluded, simply did not rise to a constitutional dimension actionable in a § 1983 suit.[27]

¶ 18 According to Judge Russell's rulings, to succeed on one's federal constitution-

al claim for continued detention in the face of protestations of innocence, the evidentiary material must support an inference that the law enforcement personnel responsible for Salazar's three-day detention acted with *deliberate indifference* to his predicament, or with *some reckless intent.*[28] Because the evidentiary material did not allow that inference, Salazar's § 1983 claim could not stand. *It is abundantly clear that Salazar's state-law tort for City's negligence that culminated in his wrongful detention must be allowed to survive the preclusion-anchored defense pressed by City.* That claim does not invoke indifference required of a constitutional violation. *It rests on want of ordinary care actionable under Oklahoma's common law of false imprisonment.* Lastly, Salazar's state-law claim met with federal-court dismissal *without reaching the merits.*

## III

### SUMMARY ADJUDICATION UPON CITY'S DEFENSES OF ISSUE PRECLUSION AND STATUTE-BASED IMMUNITY

#### A.

#### *The Standard of Review For Summary Adjudication Process*

¶ 19 Summary process—a special pretrial procedural track to be conducted with the aid of acceptable probative substitutes[29]—is a search for undisputed material facts that, *sans* forensic combat, may be applied in the judicial decision-making process.[30] Only those evidentiary materials which eliminate

21. *Supra* note 19.

22. *Id.* 443 U.S. at 140–42, 99 S.Ct. at 2692–94.

23. *Id.* 443 U.S. at 145, 99 S.Ct. at 2695.

24. *Id.* 443 U.S. at 139, 99 S.Ct. at 2692.

25. *Id.* 443 U.S. at 146, 99 S.Ct. at 2695.

26. *Id.*

27. *See also Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) ("the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property") (emphasis in original); *Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986) ("lack of care simply does

not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent").

28. For this notion, Judge Russell cites *Romero v. Fay,* 45 F.3d 1472, 1478 (10th Cir.1995).

29. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Gray v. Holman,* 1995 OK 118, 909 P.2d 776, 781 n. 16 (quoting from *Seitsinger v. Dockum Pontiac Inc.,* 1995 OK 29, 894 P.2d 1077, 1080–81); *Davis v. Leitner,* 1989 OK 146, 782 P.2d 924, 926–927.

30. The focus in summary process is not on the facts which might be proven at trial (*i.e.,* the legal sufficiency of evidence that could be adduced), but rather on whether the tendered mate-

from trial some or all fact issues may afford legitimate support for nisi prius resort to summary process.[31] Summary relief issues stand before us for *de novo* examination.[32] All facts and inferences must be viewed in the light most favorable to the non-movant.[33] Just as we enjoin the nisi prius courts to do, so too appellate tribunals bear an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant.[34] Only if the court should conclude that there is *no* substantial controversy over any material facts and the law favors the movant's claim or defense is the moving party entitled to summary judgment in its favor.[35]

### B.

*Salazar's Cause of Action for Wrongful Detention Is a State–Law Negligence Claim that (a) is Founded on a Variable Standard of Care, Which Shifts with the Circumstances of the Case, and hence (b) Tenders a Controversy to Be Submitted For Resolution by a Jury*

■■■■ ¶ 20 Negligence comprehends lack of that care which is required in a situational setting—a failure to do what a person of ordinary prudence would have done or would not have done under the circumstances.[36] The degree of care that an ordinarily prudent person should exercise in a given scenario presents an issue for the jury.[37] Only where the law definitely prescribes the standard of care to be followed may the court ever be warranted in taking the case from the jury.[38] When a negligence claim rests on a breached obligation that is measured by a variable (rather than legally fixed) standard because it shifts with the circumstances of each case, the parameters of duty owed the defendant are undefined by law [39] and the presence (or absence) of care that is the plaintiff's due tenders an issue for jury resolution.

■■■ ¶ 21 *There are no fixed legal standards for the length of time law enforcement may take when it responds to an arrestee's request that he (or she) is the wrong person.* The counsel offered by the RESTATEMENT (SECOND) OF TORTS § 45, comment c, is instructive:

"It is not within the scope of this Restatement to state when the duty to aid another

**35.** *Hargrave, supra* note 31 at 55. The function of summary process is not to set the stage for trial by affidavit, but to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain. *Russell v. Board of County Comm'rs, Carter County,* 1997 OK 80, 952 P.2d 492, 503; *Bowers v. Wimberly,* 1997 OK 24, 933 P.2d 312, 316; *Stuckey v. Young Explor. Co.,* 1978 OK 128, 586 P.2d 726, 730.

**36.** *Kelly v. Cann,* 192 Okl. 446, 136 P.2d 896, 899 (1942).

**37.** *Wetsel v. Independent School District I–1,* 1983 OK 85, 670 P.2d 986, 990–91.

**38.** *Ponca City Ice Co. v. Robertson,* 67 Okl. 86, 169 P. 1111, 1113 (1917); *Littlejohn v. Midland Valley Ry. Co.,* 47 Okl. 204, 148 P. 120, 121 (1915).

**39.** *Ponca City Ice Co., supra* note 38 at 1113; *Littlejohn, supra* note 38 at 121; *City of Cushing v. Stanley,* 68 Okl. 155, 172 P. 628 (1918); *Sand Springs Ry. Co. v. Cole,* 1955 OK 9, 279 P.2d 938, 942–43; *Lee v. Darden,* 1966 OK 220, 421 P.2d 845, 848; *Federer v. Davis,* 1967 OK 208, 434 P.2d 197, 198–199.

rial in the record reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Hulsey v. Mid–America Preferred Ins. Co.,* 1989 OK 107, 777 P.2d 932, 936 n. 15.

**31.** In reviewing any order of summary adjudication the court may consider, in addition to the pleadings, such items as depositions, affidavits, admissions, answers to interrogatories, as well as other evidentiary material offered by the parties, which are in an acceptable form. *Hargrave v. Canadian Valley Elec. Coop., Inc.,* 1990 OK 43, 792 P.2d 50, 55.

**32.** *Brown v. Nicholson,* 1997 OK 32, 935 P.2d 319, 321 n. 1. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is hence reviewable by a *de novo* standard. An appellate court claims for itself plenary, independent and non-deferential authority *to re-examine a trial court's legal rulings. Kluver v. Weatherford Hospital Auth.,* 1993 OK 85, 859 P.2d 1081, 1084.

**33.** *Carmichael v. Beller,* 1996 OK 48, 914 P.2d 1051, 1053.

**34.** *Spirgis v. Circle K Stores, Inc.,* 1987 OK CIV APP 45, 743 P.2d 682, 684–85 (approved for publication by the Supreme Court).

in *release from confinement* may arise. Factors to be taken into account are the degree of inconvenience, effort, and expense necessary to make such aid effective, and the extent to which the actor has already made a reasonable but unsuccessful effort, as well as the availability of other sources of help. *The actor is not required to do more than is reasonable under the circumstances.*" (Emphasis supplied.)

¶ 22 Oklahoma's jurisprudence tracks the Restatement's standard of a "reasonable time" to identify the arrestee's true identity. In *City of Tulsa v. Clifford*[40] law enforcement officers arrested a motorist pursuant to a warrant that was issued for his identical twin brother. The court held that where there is doubt as to the identity of arrestee as the person for whom the warrant issued and against whom the prosecution was launched, the officer "should make immediate *reasonable efforts* to confirm or deny the applicability of the warrant to the detained individual."[41] Because the law's standard of care imposed upon the detaining authority for ascertaining an arrestee's true identity is not fixed, but shifts with the circumstances of the case,[42] *what is a reasonable length of time to identify one in confinement as an individual other than the person charged and named in the warrant presents a question of fact for the jury.*

¶ 23 Whether in this case the three-day detention was longer than a reasonable period of time needed by City officials in charge to identify Salazar as one *other than* the person for whom the warrant issued clearly

40. 1990 OK CR 11, 787 P.2d 1285, 1287–88.

41. *Id.* at 1287 (emphasis supplied).

42. *Id.* at 1287–88; *Wetsel, supra* note 37.

43. 51 O.S.1991 §§ 151 *et seq.* Because the tort Salazar seeks to redress is governed by the 1991 version of the GTCA, we must assume that all citations in City's as well as in Salazar's briefs are to the version in force when the tort occurred.

44. For the immunity defenses interposed by City, see text *infra* at Part IV(A) and (B).

45. The pertinent terms of 51 O.S.1991 § 155(6) are:

presents a question for the jury. Summary adjudication on this issue was hence in error.

## IV

## SUMMARY JUDGMENT IS NOT CITY'S DUE ON ITS STATUTORY IMMUNITY DEFENSES

¶ 24 Relying on various provisions of the Governmental Tort Claims Act [GTCA],[43] City argues that it is immunized from tort liability for all negligent actions, if any, by its law enforcement personnel in charge of Salazar's case.[44]

### A.

### *Salazar's Wrongful Detention Claim*

¶ 25 The issue dispositive of City's immunity defenses interposed against the claim of wrongful detention is whether the terms of 51 O.S.1991 § 155(6)[45] operate to shield a municipality from tort liability for negligence arising from the exercise of *police or law enforcement protection services.* We hold that because City stood *vis-a-vis* Salazar not as "protector," but *qua* "law enforcer," its actions are not within the § 155(6) immunity.

### 1. *The Governmental Tort Claims Act*

¶ 26 The common-law doctrine of sovereign immunity was abrogated by *Vanderpool v. State.*[46] Later, the legislature enacted a form of sovereign immunity into

"The state or a political subdivision shall not be liable if a loss or claim results from:

* * *

6. * * * [T]he failure to provide, or the method of providing, police, law enforcement or fire protection;"

The quoted text was neither changed nor affected by the 1994 and 1995 amendments.

46. 1983 OK 82, 672 P.2d 1153, 1156–57. *Vanderpool* teaches that in the absence of a statute conferring partial or total immunity, the state, its political subdivisions and their employees acting within the scope of their employment would stand liable in tort in the same manner as a private individual or corporation.

the body of statutory law.[47] Governmental immunity of the state and its political subdivisions is waived "only to the extent and in the manner provided in" the Act.[48] Subject only to the Act's specific limitations and exceptions, the GTCA extends governmental accountability to all torts for which a private person or entity would be liable.[49] The legislature kept in force certain forms of immunity from liability by providing in § 155 [50] thirty carefully circumscribed exemptions. Section 155(6) of the GTCA affords immunity to a governmental subdivision for claims that result from "the failure to provide, or the method of providing, *police, law enforcement or fire protection*." [51] "Protection" serves as the key word for the textual analysis of the critical sentence quoted here from subsection 6. The exemption in that subsection is invocable when the tort arises while a municipality is rendering services that fall into some category of *police protection, law enforcement protection* or *fire protection*. In short, a governmental subdivision is not *liable for deficiency of protective services extended by* its police, law enforcement or fire fighting components.[52]

### 2. The Distinction Between Protective Police Services And Those That Carry Out Law Enforcement Functions

¶ 27 Statutory immunity for *providing protective services (police or fire)* is not co-extensive with a blanket immunity from common-law negligence for *carrying out law enforcement duties*.[53] The GTCA's purview of immunity does not encompass the latter category. A scenario in which a *law enforcement function* is negligently carried out—as in actions incident to arrest or imprisonment—must be distinguished from *negligently providing protective service*. The former activity is unshielded by the § 155(6) immunity.

### 3. Today's Pronouncement Is Compatible With Extant Jurisprudence

¶ 28 Oklahoma City is liable for police conduct that exceeds the limits of law-authorized action.[54] In *Schmidt v. Grady County*,

---

**47.** See Okl.Sess.L.1984, Ch. 226, eff. October 1, 1985.

**48.** 51 O.S.1991 § 152.1(B).

**49.** The terms of 51 O.S.1991 § 153 provide:
 "A. The state or a political subdivision *shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment* subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision *shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.*
 B. The liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise."
(Emphasis supplied). *See also Hughey v. Grand River Dam Authority,* 1995 OK 56, 897 P.2d 1138, 1141–42.

**50.** The exemptions set forth in 51 O.S.1991 § 155 address circumstances where the state expressly retains its sovereign immunity. The terms of § 155 provide that the state or a political subdivision shall not be liable if a loss or claim results from any one of thirty specified activities of the sovereign or its agents.

**51.** For the pertinent terms of 51 O.S.1991 § 155(6), see *supra* note 45.

**52.** What the text of 51 O.S.1991 § 155(6) doubtless intends is to free governmental subdivisions from liability (a) where in the course of hostage taking there is injury or death to a hostage and the suit alleges that, had law enforcement stormed the kidnapper's hideout in some other manner, the victim would not have died or been injured or (b) in fire cases, where the city is called upon to defend against allegations that an incorrect method used to extinguish a fire was the cause of injury or property damage.

**53.** *Schmidt v. Grady County, Oklahoma,* 1997 OK 92, 943 P.2d 595, 597 "mandates that § 155(6) not be construed so broadly as to act as a complete bar to liability under any circumstances." *Prichard v. City of Oklahoma City,* 1999 OK 5, ¶ 13, 975 P.2d 914 (1999).

**54.** City's broad claim to absolute § 155(6) immunity seems to rely on arguments similar to those it pressed in Lewis v. City of Oklahoma City, Sup.Ct. No. 90,339 (decided May 5, 1998 by Court of Civil Appeals' unpublished opinion). Lewis, a private investigator licensed to carry a firearm, was detained by City officers while attempting to take his children from his ex-wife. Two issues were presented: (1) whether Lewis was falsely arrested and, if so, (2) whether the acts of City officers were *outside the scope of*

*Oklahoma*[55] a woman who had been taken into custody by a deputy sheriff who undertook to protect her from harm was injured when she either jumped or fell from a vehicle. The court held that when she sustained the harm the deputy was "providing [to the plaintiff] police protection." *Schmidt deals not with an arrestee but with a person in need of protection from harming herself or others.* It does not involve negligence in driving but failure to put a passenger under some type of restraint. Rather than carrying out a law enforcement function, the officer in *Schmidt* was *protecting a woman from the consequences of her disturbed mental state.*

¶ 29 *Schmidt* relies on the teachings of *Shockey v. City of Oklahoma City.*[56] The fire fighters in *Shockey* were unable to secure water for a burning house *because of a faulty fire hydrant.* The plaintiffs, whose home and furnishings were destroyed by fire, sued the city for negligently failing to maintain a fire hydrant or to warn them of its malfunction. The court explained that "a municipality's immunity from tort liability applies while it is *engaged in fire protection and prevention.*"[57] The court noted that fire hydrants were installed for the "purpose of fire protection."

¶ 30 Recent jurisprudence, *Prichard v. City of Oklahoma City,*[58] holds that the *Schmidt* teachings do not give the City blanket immunity from negligence when it is carrying out law enforcement activities. A police officer in *Prichard* arrested the plaintiff and transported him to an emergency room for treatment of injuries that occurred before he was taken into custody. The plaintiff was diagnosed to have a broken jaw and referred to another hospital for immediate medical attention. The officer transported

him to the city jail where he remained for three days without any other treatment for injury. The plaintiff sued the city, alleging that its officer was negligent for failing to provide him with medical care. Unlike the plaintiff in *Schmidt,* Prichard was neither taken into custody for his own protection, nor was he harmed in police custody. Instead, he was injured *before* being taken into police custody, which injuries were evident to the officer. The actions of the police officer were deemed "unrelated to the method of providing police protection to the public."[59]

¶ 31 In *Medina v. State*[60] Ramirez, the decedent, was confined with one Grant in a cell at a correctional facility. The prison physician prescribed Enkaide for Grant's congenital heart condition, to be taken every six hours. Once each week the prison pharmacy furnished Grant a supply of twenty-eight Enkaide tablets. The prison pharmacy dispensed all prescription medication in the same manner at *weekly* "pill lines." A one-week supply of Enkaide, twenty-eight pills, is a potentially lethal quantity of that medication. Ramirez died from ingesting a lethal dose of the medicine, either accidentally or by design. This court determined that (1) the dispensing of medicine to an inmate in a state penal institution by a state employee is a function *performed in the operation of an institution* and hence exempt from tort liability, and (2) the state is not required to waive its sovereign immunity and provide an inmate with a GTCA remedy *for the ordinary negligence of officers or employees at a penal institution.* In *Redding v. State*[61] a prison inmate was seriously injured when he was struck in the head by a softball during a prison softball game. This court held the state immune from tort liability under the

*their employment,* which would render the City immune from liability under the GTCA. Lewis can be distinguished from the case at bar. The officer there was not using unreasonable force and did not extend the restraint beyond the parameters of emergency needs. *Lewis does not stand for the notion that the city is immune whenever police action is involved.*

55. *Id.*

56. 1981 OK 94, 632 P.2d 406.

57. *Id.* at 408 (emphasis supplied).

58. *Supra* note 53, 1999 OK at ¶ 13, 975 P.2d 914.

59. *Supra* note 53, 1999 OK at ¶ 17, 975 P.2d 914.

60. 1993 OK 121, 871 P.2d 1379.

61. 1994 OK 102, 882 P.2d 61.

GTCA. The court looked to *Medina* as determinative of liability.

### 4. The Essence of Salazar's Negligence Claim For Overlong Detention

■■■ ¶ 32 Neither the arresting nor the detaining officer was *in this case* affording *protection* to Salazar. Rather, City employees in charge were acting in the exercise of law enforcement duties. *In short, City rendered general law enforcement services in the context of which Salazar was not a protected subject, but instead an arrested and detained person.* He did not sue for *City's failure to protect him* from himself or from others nor did he press a claim for inadequacy of City's protection against fire. We hence conclude and hold that City is *not* shielded by the § 155(6) immunity from tort liability for the alleged negligence in Salazar's wrongful detention.

### B.

### City's Other Immunity Defenses

¶ 33 City invoked several other GTCA provisions in support of its immunity defense. According to City's answer, Salazar's claims are limited (or barred) by §§ 155(2–6), (9), (13), (16–18), (20), (24) and (29) of the GTCA. City argues that the GTCA exempts it from legal responsibility for (a) any unintentional misrepresentations incident to the arrest and detention of Salazar (§ 155(17)), (b) for negligence in the service of process (§ 155(3)) and (c) any negligence incident to the operation of the jail facilities (§ 155(24)).[62] Any intentional actions of its officers, City asserts, would be outside the scope of employment and hence not covered by the GTCA. Moreover, City urges, because it does not own or operate the facility where Salazar was held, he should have pressed his claim for wrong-

ful detention against the county sheriff's department.

¶ 34 As we measure Salazar's claim by the probative support in the record, its center core is "wrongful detention"—*i.e.*, confinement for a period longer than that which, absent negligence, would have disclosed his mistaken identity. Because that core claim is fact-intensive and not within the purview of City's invoked immunity, we need not comment on any other elements that are revealed by the evidentiary materials before us. Moreover, many of the invoked immunity elements that relate to Salazar's false arrest claim are *interconnected with City's issue-preclusion* defense. Since we cannot today pass on that defense, neither can we address any of its interconnected facets.

¶ 35 Moreover, the probative materials in the record give no foundational support for many of these immunity defenses. Because it seems *highly doubtful* that any of the interposed statutory exemptions from liability were individually passed on by the trial judge, we decline to make first-instance determinations.[63] We leave it to the court of first instance to undertake, on remand, an inquiry and determination of the separately interposed immunity defenses that will stand supported by probative material.

### V

### SUMMARY

¶ 36 The federal-court judgment roll is needed for support of City's issue-preclusion defense. The burden rests on City to include in the record a complete judgment roll in the adjudication on which it relies. The record tendered here *is not supportive of City's broadly asserted preclusion-bar defense.*

¶ 37 Assuming City is correct in its view that issue preclusion avails on the probable-cause issue, the summary relief granted be-

---

**62.** In support of its § 155(24) immunity defense, City cites *Medina, supra* note 60, *Redding, supra* note 61 and *Purvey v. State,* 1995 OK 103, 905 P.2d 770.

**63.** It would be improper for this court to act upon this issue as a tribunal of first instance.

*Toxic, supra* note 17 at 913; *Dyke, supra* note 14 at 300 n. 13; *Teel, supra* note 17 at 999 n. 19; *American Ins. Assn, supra* note 17 at 741; *Matter of Estate of Bartlett, supra* note 17 at 377; *Davis, supra* note 17 at 824.

low is still fraught with infirmity. Issue preclusion is not available to bar a trial on the alleged issue of negligence, if any, in unduly delaying Salazar's identification as one other than the person for whom the warrant issued. By citing *Baker*[64] and dismissing Salazar's state-law claims, Judge Russell facially appears to have excluded from federal-court cognizance the elements of Salazar's claim for negligence in wrongful (or overlong) detention.

¶ 38 Even if *all* of City's arguments for issue preclusion were found valid, summary judgment was nonetheless in error: (1) the state-law claim for overlong confinement is *fact-intensive* and presents a *jury issue;* and (2) City's immunity-based defense rests on excessively drawn parameters of § 155(6) immunity. Extant jurisprudence does not support City's plea for statutory immunity in this case for *activities connected with extending law-enforcement protection.*

¶ 39 Because City's arguments, here and below, fail to support the summary adjudication's correctness, all issues will stand on remand subject to comprehensive reappraisal in light of the federal-court judgment roll. The remaining issues sought to be resolved by immunity defenses also need to be re-examined upon the analysis we provide today. This cause is hence remanded for a nisi prius reconsideration of all untried issues pressed. When on a judgment's reversal a cause is remanded, it returns to the trial court as if it had never been decided before, save only for the "settled law" of the case. By today's remand the parties are relegated to their prejudgment status.[65]

¶ 40 On certiorari granted on Salazar's petition, the Court of Civil Appeals' opinion is vacated, the trial court's judgment is reversed and the cause remanded for further proceedings to be consistent with today's pronouncement.

64. *Supra* note 19.

65. On remand following a reversal the parties are relegated to their prejudgment posture. *Nelson v. Pollay,* 1996 OK 142, 916 P.2d 1369, 1376–1377; *Fent, supra* note 7 at 134; *Thomas v.*

¶ 41 SUMMERS, C.J., HARGRAVE, V.C.J., LAVENDER, ALMA WILSON, KAUGER, and WATT, JJ., concur;

¶ 42 HODGES and SIMMS, JJ., dissent.

*National Auto. & Cas. Ins. Co.,* 1994 OK 52, 875 P.2d 424, 428; *Dyke, supra* note 14 at 304 n. 36; *Parker v. Elam,* 1992 OK 32, 829 P.2d 677, 682; *Seymour v. Swart,* 1985 OK 9, 695 P.2d 509, 512–513.