**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 14, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ARONDA PIGEON, individually and as
Special Administrator of the Estate of
Dustin Pigeon, deceased,

     Plaintiff - Appellant,

v.

CITY OF OKLAHOMA CITY,
a municipal corporation; WILLIAM
CITTY, individually,

     Defendants - Appellees,

and

KEITH PATRICK SWEENEY,

     Defendant.

No. 22-6033
(D.C. No. 5:18-CV-00728-J)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **HOLMES**, Chief Judge, **HARTZ** and **ROSSMAN**, Circuit Judges.
_____

---

* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Oklahoma City police officer Keith Sweeney responded to Dustin Pigeon's mental health crisis by storming onto the scene and gunning him down without determining if he posed a threat to others or consulting with other officers who had already engaged Mr. Pigeon.  A jury convicted Officer Sweeney of second-degree murder for his actions.  In this suit, Mr. Pigeon's mother seeks damages from Oklahoma City and its former police chief, William Citty, under 42 U.S.C. § 1983 for Chief Citty's alleged failure to properly supervise Officer Sweeney.  Ms. Pigeon also seeks to hold Oklahoma City liable under state tort law for Officer Sweeney's negligence under the tort doctrine of respondeat superior.  The district court granted summary judgment to Oklahoma City and Chief Citty on the § 1983 claims because Ms. Pigeon failed to produce evidence showing Officer Sweeney's prior misconduct would have alerted Chief Citty that Officer Sweeney almost inevitably would have used excessive force against Mr. Pigeon.  It granted summary judgment on the tort claim based on a statutory exemption from liability that applies when police attempt to take individuals into protective custody.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  Background

Oklahoma City hired Officer Sweeney as a police recruit in 2008.  Ms. Pigeon's theory of the case contends Chief Citty did not properly supervise Officer Sweeney, so we summarize Officer Sweeney's disciplinary history:

- In June 2011, the department gave Officer Sweeney verbal counseling and remedial training after he used force to prevent a suspect from swallowing baggies of what Officer Sweeney believed to be cocaine;

- In October 2011, the department gave Officer Sweeney verbal counseling after he used profanity on the job;

- In November 2011, the department gave Officer Sweeney verbal counseling after he failed to make a police report concerning possible child abuse reported to him telephonically and added his personal opinions to the call dispositions;

- In October 2014, the department reprimanded Officer Sweeney for failing to comply with department procedures regarding barricaded mental patients after he barged into a home to tase an armed and suicidal woman;

- In February 2015, the department gave Officer Sweeney post-incident training on the proper positioning and use of police vehicles for cover after Officer Sweeney and another officer shot and killed a man who drove his car at the other officer;

- In 2016, the department reprimanded Officer Sweeney for failing to properly book seized evidence into the property room, failing to document a meeting that took place outside of work hours, failing to work scheduled 8-hour shifts, and changing his work schedule without supervisor approval;

- In March 2017, the department reprimanded Officer Sweeney for using his police position to obtain confidential information regarding a case assigned to the Department of Human Services;

- In March 2017, the department placed Officer Sweeney on administrative leave while it looked into Officer Sweeney's investigative practices; and

- After Office Sweeney used profanity while making an arrest in November 2017, the department ordered him to undergo remedial training on language usage.

The October 2014 and February 2015 incidents involving Officer Sweeney's use of force are especially noteworthy. In the October 2014 incident, Officer Sweeney responded to a standoff that began when a suicidal woman armed with two guns pointed one of them at an officer. Other officers arrived on the scene and

secured the perimeter.  The woman yelled at the officers from behind a locked glass door to come and get her.  At one point she put one of the guns in her mouth and the other against her temple.  Officer Sweeney and another officer hatched and executed a plan for the other officer to break open the glass door so that Officer Sweeney could tase the woman and take her into custody.  The incident report noted Officer Sweeney's rash actions violated department procedures regarding barricaded mental patients and escalated what was already an extremely dangerous standoff.  The department ordered Officer Sweeney to undergo counseling following this incident.

In the February 2015 incident, Officer Sweeney joined a vehicle chase started by another officer.  When the suspect's car reached a dead end, Officer Sweeney and the other officer got out of their cars and approached the suspect.  The suspect suddenly accelerated his car toward the other officer.  Officer Sweeney and the other officer then shot and killed the suspect.  The department gave Officer Sweeney post-incident training that included review of the proper way to position police vehicles and use them as cover in this type of situation.

That brings us to the incident giving rise to this suit, which the district court accurately described:

> On November 15, 2017, Dustin Pigeon called 911 and stated that he was attempting to commit suicide.  Officers Erik Howell and Troy Nitzky arrived at the scene of the call first and observed Mr. Pigeon to be holding lighter fluid and a lighter.  They communicated with him and directed him numerous times to put the lighter fluid down and put his hands up, which he ultimately did.
>
> While Officers Howell and Nitzky were communicating with Mr. Pigeon, [Officer Sweeney] arrived on the scene.  Sweeney did not

4

communicate with either Officer Howell or Officer Nitzky when he arrived, and he started ordering Mr. Pigeon to "drop it" and get on the ground.  When Sweeney said, "I will f***ing shoot you", Mr. Pigeon lowered his hands and backed further away from the officers.  Officer Nitzky fired his bean bag shotgun, hitting Mr. Pigeon in his right hip, and Sweeney fired five simultaneous shots with his handgun, killing Mr. Pigeon.  An investigation was conducted, and Sweeney was charged with second degree murder.  On November 4, 2019, Sweeney was convicted of second degree murder.

Aplt. App., vol. 7 at 115–16 (footnotes omitted).

Ms. Pigeon then filed this suit, bringing a § 1983 claim for excessive use of force in violation of the Fourth Amendment and other claims against Officer Sweeney, § 1983 claims against Chief Citty and Oklahoma City for their failure to supervise Officer Sweeney, and a tort claim against Oklahoma City under the doctrine of respondeat superior.  The district court granted summary judgment in favor of Chief Citty and Oklahoma City on the claims against them.  Ms. Pigeon settled her claims against Officer Sweeney and now appeals the district court's grant of summary judgment in favor of Chief Citty and Oklahoma City.

## II.  Discussion

We review the district court's summary judgment decision de novo, viewing the factual record and making reasonable inferences from it in the light most favorable to the nonmoving party.  *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact

5

is material when it might affect the outcome of the suit under the governing substantive law." *Bird*, 832 F.3d at 1199 (brackets and internal quotation marks omitted). "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Felkins v. City of Lakewood*, 774 F.3d 647, 653 (10th Cir. 2014) (internal quotation marks omitted).

A. **Constitutional Claims against Chief Citty and Oklahoma City for Failure to Properly Supervise Officer Sweeney**

Ms. Pigeon contends Chief Citty and Oklahoma City are liable for Officer Sweeney's use of excessive force against Mr. Pigeon because they failed to properly supervise Officer Sweeney. There are "three elements required to establish a successful § 1983 claim against [an individual] defendant based on his or her supervisory responsibilities: (1) personal involvement[,] (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). The district court found the requisite state of mind to be "deliberate indifference," Aplt. App., vol. 7 at 117, and "[o]n appeal, no one challenges the use of the deliberate-indifference standard. We therefore assume without deciding that deliberate indifference is the applicable state of mind." *Schneider*, 717 F.3d at 769. "A local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by

6

the plaintiff." *Burke v. Regalado*, 935 F.3d 960, 997–98 (10th Cir. 2019) (brackets and internal quotation marks omitted).

"To prove municipal liability under § 1983, the plaintiff must show:  (1) a municipality enacted or maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation." *Arnold v. City of Olathe*, 35 F.4th 778, 795 (10th Cir. 2022).  "A court may find that the challenged practice is an official policy or custom for municipal liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or a deliberately indifferent training or supervision." *Id.* (internal quotation marks omitted).  "A municipality acts with deliberate indifference when it has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and the municipality consciously or deliberately chooses to disregard the risk of harm." *Id.* (internal quotation marks omitted).  "Notice can be established by proving the existence of a pattern of constitutional violations or, in a narrow range of circumstances, if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Id.* (internal quotation marks omitted).

The district court rejected Ms. Pigeon's § 1983 claim against Chief Citty because Ms. Pigeon failed to produce evidence showing Chief Citty acted with deliberate indifference to the risk that Officer Sweeney would violate a citizen's constitutional rights.  Ms. Pigeon argues the district court erred in its ruling because

Chief Citty "was aware of [Officer] Sweeney's long history of policy violations and misconduct, including a prior incident in which he dangerously escalated a situation with a mentally disturbed individual, just as he did in the present case," Aplt. Br. at 14, and "chose to disregard what he already knew about [Officer] Sweeney's propensity to violate policies and procedures," *id.* at 10–11.

We agree with the district court that Ms. Pigeon failed to produce sufficient evidence of deliberate indifference to survive summary judgment.[1] Ms. Pigeon does not point to any prior incident where Officer Sweeney violated a person's constitutional rights through the use of excessive force. Nor does Ms. Pigeon point to any evidence establishing a high predictability or near inevitability that Officer Sweeney would use excessive force when he had not done so in the past. Indeed, Ms. Pigeon does not challenge the district court's conclusion that "[t]he majority of

---

[1] Ms. Pigeon argues Chief Citty had a "burden . . . to establish the existence of undisputed material facts which would entitle him to summary judgment" and "failed to do so." Aplt. Br. at 5. This argument "confuses burden-of-proof standards." *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1194 (10th Cir. 2021). "Rule 56 requires a movant for summary judgment . . . to carry the burden of production in making a prima facie case," but "when the nonmovant bears the burden of persuasion at trial, the movant may satisfy its burden simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 1194–95 (internal quotation marks omitted); *see also* Aplt. App., vol. 5 at 119 (Chief Citty arguing in his motion for summary judgment that "Plaintiff cannot prove Defendant Citty was deliberately indifferent to Mr. Pigeon's rights"). "If the movant carries this initial burden, the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts from which a rational trier of fact could find for the nonmovant." *Lupia*, 8 F.4th at 1195 (ellipses and internal quotation marks omitted).

[Officer] Sweeney's prior policy violations and misconduct do not relate in any way to the use of force and thus would not have alerted [Chief] Citty to any risk of constitutional harm of the type experienced by Mr. Pigeon." Aplt. App., vol. 7 at 118. And even in the incident where Officer Sweeney used a taser on a mentally disturbed person in violation of established procedures, Ms. Pigeon has not produced any evidence establishing that Officer Sweeney's use of force was "excessive" or that Officer Sweeney otherwise violated that person's constitutional rights.

The district court rejected Ms. Pigeon's § 1983 claim against Oklahoma City because that claim "is based upon the actions of [Chief] Citty." *Id.* Ms. Pigeon argues the district court erred in dismissing the claim against Oklahoma City because it did not undertake a separate analysis of the claim. But Ms. Pigeon acknowledges that the "same" deliberate indifference standard applies to claims against individuals and "municipalities themselves." Aplt. Br. at 8; *see also Burke*, 935 F.3d at 999 (holding that where asserted "supervisory liability and municipal liability" claims both required showing "deliberate indifference," "the elements for supervisory and municipal liability [were] the same"). And Ms. Pigeon does not contend the district court erred in concluding that the § 1983 claim against Oklahoma City "is based upon the actions of [Chief] Citty," Aplt. App., vol. 7 at 118, or point to any evidence establishing Oklahoma City's deliberate indifference via the acts of another person.[2]

---

[2] "[G]overnmental bodies can act only through natural persons." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988).

We therefore agree with the district court that because Ms. Pigeon failed to establish deliberate indifference on Chief Citty's part, her § 1983 claim against Oklahoma City necessarily fails.

## B. Negligence Claim Against Oklahoma City

A provision of the Oklahoma Governmental Tort Claims Act provides state and political subdivisions such as Oklahoma City with immunity from claims that stem from "the failure to provide, or the method of providing, police, law enforcement or fire protection." Okla. Stat. tit. 51, § 155(6). The Oklahoma Supreme Court has held that "protection" is the operative word in the statute, and that § 155(6) immunity therefore applies when police are providing "protection," and § 155(6) immunity does not apply when police are carrying out a "law enforcement function." *Salazar v. City of Okla. City*, 976 P.2d 1056, 1066 (Okla. 1999) (italicization omitted).

Under Oklahoma law, "protection" includes actions taken to restrain a person "from harming herself or others." *Id.* at 1067 (italicization omitted); *see also Schmidt v. Grady Cnty.*, 943 P.2d 595, 596, 598 (Okla. 1997) (holding county was immune under § 155(6) where a deputy took the plaintiff "into custody to protect her from harming herself or others"). In contrast, an officer is not engaged in a protective function where the officer carries out an arrest as part of his or her general "law enforcement activities." *Morales v. City of Okla. City ex rel. Okla. City Police Dep't*, 230 P.3d 869, 876 (Okla. 2010). This court has applied § 155(6) immunity to situations where officers have shot and killed mentally disturbed people while

10

attempting to take them into protective custody.  *See, e.g.*, *Myers v. Okla. Cnty. Bd.*

*of Cnty. Comm'rs*, 151 F.3d 1313, 1315, 1320–21 (10th Cir. 1998).

The district court found that the evidence submitted on summary judgment

established that Officer Sweeney and the other responding officers were engaged in a

protective function—attempting to take Mr. Pigeon into custody to protect him from

harming himself or others.  Ms. Pigeon argues the district court's "finding of fact was

not supported by the record."  Aplt. Br. at 16.[3]  But she agrees that the evidence

shows that "the original call was for a suicidal individual," *id.*, that "Officer Nitzky

believed Mr. Pigeon was a danger to himself" but "did not believe he was in danger

from Mr. Pigeon," *id.* at 17, that "[t]he only person in danger from Mr. Pigeon was

himself," *id.* at 19, and that Officer Howell "hoped they would be able to get

Mr. Pigeon into custody and get him the help he needed," *id.*  These undisputed facts

all point to the conclusion reached by the district court—that the officers were there

to protect Mr. Pigeon, not to arrest him for committing a crime or to engage in some

other law enforcement activity.

Ms. Pigeon's only challenge to this conclusion consists of speculation that

because Officer Sweeney broke the law and violated procedures related to a mental

---

[3] Ms. Pigeon also argues the district court erred because it made a finding of fact.  *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997) ("[T]raditional 'findings of fact' are inappropriate in a summary judgment order.").  But "findings of fact are . . . helpful to an appeals court on summary judgment review . . . when the district court summarizes undisputed facts."  *Id.*  We read the district court's order as summarizing the undisputed evidence in the record and therefore see no error just because the district court labeled its summary as a finding.

11

health call, he must have subjectively intended to engage in law enforcement activity while on the call. But Ms. Pigeon does not cite any evidence to support this analytical leap, such as Officer Sweeney's testimony on the subject. "To avoid summary judgment, a party must produce *specific* facts showing that there remains a genuine issue for trial." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir. 1988) (internal quotation marks omitted). Ms. Pigeon failed to do so.

### III.  Conclusion

We affirm the district court's grant of summary judgment in favor of Chief Citty and Oklahoma City.

Entered for the Court

Jerome A. Holmes
Chief Judge