Gerald OUELLETTE and Mae Ouellette,
Plaintiffs–Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant–Appellee.

No. 78236.

Supreme Court of Oklahoma.

June 28, 1994.

Rehearing Denied July 19, 1996.

Joseph J. Reinke, Oklahoma City, for appellants.

David D. Wilson, Oklahoma City, for appellee.

OPALA, Justice.

The dispositive issue on certiorari is whether the risk carrier of UM[1] coverage must answer in damages for the "grief and loss of companionship" of its insureds, occasioned by the wrongful death of their emancipated, adult son, even though in the distribution stage of an earlier wrongful-death action (by the decedent's surviving spouse) the plaintiffs-parents were denied, for lack of legal interest, any part of the recovery. We answer in the negative.

## I

## ANATOMY OF LITIGATION

### *The Wrongful–Death Action*

The surviving spouse—*qua* personal representative of the decedent's next of kin and of his estate—brought an action to recover for personal injuries and wrongful death of the decedent, Gerard Dwayne Ouellette. He died in a car/motorcycle accident on May 5, 1988 from injuries occasioned by a negligent underinsured motorist.[2] His widow joined as defendants in the case both the tortfeasor

and his motorcycle's UM carrier. She claimed damages in excess of the tortfeasor's own $10,000 liability insurance limit and of the $20,000 limit upon the motorcycle's UM coverage. After a jury-waived trial, the nisi prius court entered a $30,000 judgment for the plaintiff. The judgment is now released as satisfied by both the tortfeasor and the decedent's UM carrier. In a postjudgment proceeding[3] the trial court (1) allowed $10,000 of the recovery to the decedent's surviving spouse and $10,000 to each of his two minor children and (2) *for "lack of legal interest" denied the parents any distributive share in the widow's wrongful-death recovery.*[4]

### *The Parents' Ex Contractu Claim*

Three years later the plaintiffs, Gerald and Mae Ouellette [parents], brought this action to recover directly from State Farm Mutual Automobile Insurance Company [State Farm or insurer] under the UM provisions of *their* three automobile policies for loss they claim to have sustained from the wrongful death of their emancipated, adult son. They sought damages for *their "grief and loss of companionship."*[5]

### *The Insurer's Dismissal Quest*

The parents' UM carrier pressed for dismissal on the grounds that (1) the parents

---

**1.** We use the term "UM coverage" as a contraction of the larger phrase "uninsured/underinsured motorist coverage."

**2.** The widow's wrongful-death petition sought damages for "wrongful death, medical bills for the expense of the injury and burial expenses, pain and suffering of the decedent, grief of the spouse, destruction of the marital relationship and destruction of the parental relationship of the children born of the marriage between plaintiff and her decedent, including the loss of guidance and companionship for all the survivors of the decedent, and loss of future earnings, and grief and destruction of the parent-child relationship of the parent(s) of plaintiff's decedent."

**3.** The terms of 12 O.S.1981 § 1053(D) are:
"Where the *recovery is to be distributed according to a person's pecuniary loss or loss of companionship,* the judge shall determine the proper division." (Emphasis supplied.)
The widow's plea for distribution was pressed on behalf of *the decedent's "survivors".* Her applica-

tion lists five such survivors: the widow, two minor children and the parents of the decedent.

**4.** Although the widow pressed two causes of action—one on behalf of the estate for pain and suffering and the other for wrongful death—*the judgment allows only wrongful death damages;* the distribution order appears to have apportioned that recovery to the next of kin, leaving *nothing* for the estate.

**5.** The parents rest their claim on 12 O.S.1981 § 1053(B), whose pertinent provisions are:

"B. The damages recoverable in actions for wrongful death as provided in this section shall include the following: * * * The *grief and loss of companionship of the* children and *parents of the decedent,* which shall be distributed to them according to their grief and loss of companionship." (Emphasis added.)

are *not authorized* by 12 O.S.1991 §§ 1053(B) [6] and 1054 [7] to bring a wrongful-death action as parties plaintiff; (2) in an earlier wrongful-death action the widow, individually and as the personal representative of decedent's estate, had secured a *complete adjudication* of all issues *now sought to be* tendered; (3) State Farm's rights *qua* insurer would be prejudiced if this action were allowed to proceed, because the earlier wrongful-death judgment against the tortfeasor operates as a bar to the UM carrier's subrogation claim against the offending actor; (4) the trial court's finding (in the prior wrongful-death action) that the *parents are not entitled to any recovery* (for lack of legal interest) raises a bar of "estoppel by judgment"; [8] and (5) since the parents themselves could *not* bring *another* death action, they cannot by this lawsuit *indirectly secure a recovery that stands barred to them directly.* To its dismissal motion the insurer attached *some but not all* of the pleadings and rulings in the widow's wrongful-death action. [9]

The parents argued that the law allows them to press this claim in a breach-of-contract action. At the time of their loss, they asserted, a UM clause of *their* policies provided coverage for any losses which they were "legally entitled to recover" from the operator of an uninsured or underinsured motor vehicle. According to the parents, the earlier death action's termination has *no effect* on their direct *ex contractu* demands. *The trial court ruled for the insurer and dismissed the case.*

### The Court of Appeals' Disposition

The Court of Appeals affirmed, correctly treating the nisi prius ruling as one for summary judgment. [10] The appellate court reasoned that (1) while the insurer's liability for UM coverage is contractual, the parents' statute-based quest for *any element of* wrongful-death damages is comprised within the *single death claim* that must be brought by an authorized party plaintiff—i.e. by the decedent's widow in this case; (2) the widow's claim is derivative of that which the decedent could have brought had he survived

**6.** For the pertinent terms of 12 O.S.1981 § 1053(B), see *supra* note 5.

**7.** The terms of 12 O.S.1981 § 1054 are:

"In all cases where the residence of the party whose death has been caused as set forth in the preceding section of this article is at the time of his death in any other state or territory, or when, being a resident of this state, *no personal representative is or has been appointed, the action* provided in the said section *may be brought by the widow, or where there is no widow, by the next of kin of such deceased.*" (Emphasis added.)

**8.** Issue preclusion and collateral estoppel (or estoppel by judgment) are *two different names for the same legal doctrine.* Restatement of Judgments (Second) § 27, Comment b; *Underside v. Lathrop,* Okl., 645 P.2d 514, 517 n. 8 (1982); *Veiser v. Armstrong,* Okl., 688 P.2d 796, 799 n. 7 (1984). Under this doctrine, once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate the issue *in a suit brought for a different cause of action. Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980); *Underside, supra* at 516–517; *Veiser, supra* at 800. The issue preclusion bar is distinct from that of "claim preclusion" (res judicata). Under the latter principle, a final

judgment on the merits of an action precludes the parties from relitigating *not only the adjudicated claim but also any theories or issues that were either actually decided or could have been decided in that action.* Wilson v. Kane, Okl., 852 P.2d 717, 722 (1993); Allen, supra, 449 U.S. at 94, 101 S.Ct. at 414; Restatement of Judgments, supra at 852. Issue preclusion (rather than claim preclusion) is the interposed insurer's defense here. This is so because the parents' exclusion in the postrecovery distribution proceeding arose in the framework of a cause of action different from the ex contractu *claim asserted in this case.*

**9.** To its motion to dismiss the insurer attached the following pleadings and papers on file in the widow's wrongful-death action: the petition, answers of the tortfeasor and decedent's UM carrier, judgment, release and satisfaction of judgment, application for order approving settlement and for division of proceeds, order approving settlement and allowing division of proceeds, as well as the accident report and death certificate.

**10.** Under our pleading regime (the Oklahoma Pleading Code, 12 O.S.1991 §§ 2001 et seq.), if a dismissal motion tenders for consideration any materials *dehors the pleadings in the case at bar, summary judgment procedure must be utilized. See in this connection, Dyke v. Saint Francis Hospital,* Okl., 861 P.2d 295, 299 (1993); *Nor-*

**1366** ■■■■■■■■■■■■■■■

the accident;[11] and (3) because wrongful death is not actionable absent a statute, the parents' quest for the damages they seek (whether directly from a tortfeasor or indirectly via the UM coverage) must accord with the legislative wrongful-death recovery regime.

Although we reach today the same conclusion as the Court of Appeals, we nonetheless afford certiorari review in order to provide an in-depth analysis of the parents' UM–coverage claim *within the confining framework of a statutory wrongful-death action.*

## II

## THE PARENTS CANNOT MAINTAIN *THIS* ACTION AS ONE FOR WRONGFUL DEATH

■ Wrongful–death claims are not cognizable at common law. In that tradition, the right of action for personal injury stands

extinguished by the death of the injured party.[12] This rule stands abrogated by the provisions of 12 O.S.1981 §§ 1051–1055.[13] A cause of action for an injury to the person is now *survivable* (§§ 1051 and 1052), and a *new and independent* wrongful-death claim has been created (§§ 1053 et seq.). Both the death and the survivor actions *lie only if at the time of his/her death the decedent had a right of recovery for the injury in suit* (§ 1053).[14]

A wrongful-death claim may be pressed *only* by persons authorized to bring it (§§ 1053 and 1054).[15] By force of § 1053(A) the action may be brought by the personal representative of the decedent,[16] but if none has been appointed, then by the widow, or where there is no widow, by the decedent's next of kin (§ 1054).[17] Recovery must inure to the exclusive benefit of *"the surviving spouse and children, if any, or next of kin"* (§ 1053). (Emphasis supplied.)

The term "next of kin," used in § 1053, has been defined as including "all who would be

---

*man v. Trison,* Okl., 832 P.2d 6, 8 (1992); *Silver v. Slusher,* Okl., 770 P.2d 878, 881 n. 8 (1988).

**11.** Support for this contention is drawn from the opening sentence of 12 O.S.1981 § 1053(A):

"When the death of one is caused by the wrongful act or omission of another, the *personal representative of the former* [deceased] may maintain an action therefor against the latter [tortfeasor], or his personal representative if he is also deceased, if the *former might have maintained an action, had he lived,* against the latter, or his representative, *for an injury for the same act or omission."* (Emphasis added.)

**12.** The cause of action for personal injury was said to die with the person entitled to sue. *Boswell v. Nolan,* Okl., 366 P.2d 767, 769 (1961); *Landry v. Acme Flour Mills Co.,* 202 Okl. 170, 211 P.2d 512, 514 (1949); *Kennedy v. Byers,* 107 Ohio St. 90, 140 N.E. 630 (1923). This rule is expressed in the Latin maxim *actio personalis moritur cum persona*—a personal action dies with the person. "The maxim was originally applied to almost every form of action, whether arising out of contract or tort, but the common law was modified by the Statute of 4 Edward the III [1331]. *Momand v. Twentieth–Century Fox Film Corporation,* D.C.Okl., 37 F.Supp. 649, 652 [1941]." Black's Law Dictionary, p. 29 (5th ed. 1979). To alleviate the harshness of the common-law doctrine Parliament created a new cause of action for wrongful death by passing Lord Campbell's Act, 9 and 10 Vict. Ch. 93

(1846). *See* discussion in *Gentry v. Wallace,* 606 So.2d 1117, 1120 (Miss.1992); *Gorke v. Le Clerc,* 23 Conn.Supp. 256, 181 A.2d 448, 449–450 (1962); *Moyer v. Phillips,* 462 Pa. 395, 341 A.2d 441, 442–443 (1975).

**13.** Oklahoma's wrongful-death legislation follows the language of Lord Campbell's Act, *supra* note 12; *St. Louis & S.F.R. Co. v. Goode,* 42 Okl. 784, 142 P. 1185, 1187 (1914); *Brookshire v. Burkhart,* 141 Okl. 1, 283 P. 571, 574 (1930).

**14.** A death action rests on tortious conduct for which the decedent, had he lived, could have maintained an action. *Riley v. Brown and Root, Inc.,* Okl., 836 P.2d 1298, 1301 (1992); *Haws v. Luethje,* Okl., 503 P.2d 871, 874 (1972); *Hill v. Graham,* Okl., 424 P.2d 35, 37–38 (1967).

**15.** *Shawnee Gas & Electric Co. v. Motesenbocker,* 41 Okl. 454, 138 P. 790, 791–792 (1914).

**16.** For the pertinent terms of 12 O.S.1981 § 1053(A), see *supra* note 11; *Haws, supra* note 14, 503 P.2d at 873; *Crossett v. Andrews,* Okl., 277 P.2d 117, 118 (1954); *Wilkey v. Southwestern Greyhound Lines,* Okl., 322 P.2d 1058, 1061 (1958).

**17.** For the pertinent terms of 12 O.S.1981 § 1054, see *supra* note 7; *Gaither By & Through Chalfin v. City of Tulsa,* Okl., 664 P.2d 1026 (1983).

entitled to share in the distribution of the personal property of the deceased." [18] The parents' quest for the next-of-kin status must be gauged by the order of succession established in 84 O.S.Supp.1984 § 213(B)(1) and (2). The last cited section provides that if the decedent *leave* a surviving spouse and a child or children, *the parents may not take as next of kin.*[19] In the scheme of succession they take as next of kin if the decedent leave neither issue nor a surviving spouse.[20] *Only* when the parents are the decedent's next of kin may they press for "grief and loss of companionship" damages as an element of *their* authorized recovery.[21]

We cannot treat the present action by the parents as a functional equivalent of one for wrongful death. There can be *only one wrongful-death claim and one recovery.*[22] Moreover, the parents are not authorized parties plaintiff for the recovery they seek. This is so because the decedent left surviving him both a widow and children.[23] Were we to assume that the parents could bring a wrongful-death claim, this action would nonetheless fail unless the earlier suit by the widow could, in *this* action, be declared void on the face of the record proper (judgment roll) in the other case.[24] The judgment roll in the death action has not been included in the record on appeal.[25] There is hence *nothing* before us to show a fatal facial infirmity in the earlier decision.[26] We hence conclude the parents cannot maintain *this suit as a new action for wrongful death.*

---

**18.** *Silva v. Gulf Oil Corporation,* Okl., 320 P.2d 711, 715 (1958); *Adams v. Coleman,* Okl., 386 P.2d 1004, 1009 (1963).

**19.** 84 O.S.Supp.1984 § 213(B)(1) and (2).

**20.** 84 O.S.Supp.1984 § 213(B)(1) and (2).

**21.** 12 O.S.1981 § 1053(B), *supra* note 5.

**22.** *Haws, supra* note 14, 503 P.2d at 875; *Shawnee, supra* note 15, 138 P. at 792.

**23.** For a discussion of authorized distribution claimants, see Part IV, *infra.*

**24.** A judgment is facially invalid if, on an inspection of the record proper, it is apparent that one or more of the requisite jurisdictional elements— that of the subject matter, *in personam* cognizance, or the court's power to render a particular decision—is shown to have been absent. *Heiman v. Atlantic Richfield Co.,* Okl., 807 P.2d 257, 260 n. 11 (1991); *Capitol Federal Savings Bank v. Bewley,* Okl., 795 P.2d 1051, 1054 (1990); *Hough v. Hough,* Okl., 772 P.2d 920, 921 (1989); *Mayhue v. Mayhue,* Okl., 706 P.2d 890, 893 n. 8 (1985).

**25.** When a claim or issue is sought to be *barred* by an earlier judgment *in another case,* or when the legal bar of some prior judgment is sought to be *avoided,* the party relying on the adjudication *dehors* the case then before the trial court *must* secure admission (for the record on appeal) *of the entire judgment roll* (or record proper) *in the other case.* Unlike the trial courts, an appellate court may *not* take *judicial notice of any material*

on file below, which is not incorporated into the appellate record for review. The meaning, legal effect and validity of a nisi prius adjudication cannot be assessed based solely on the four corners of a journal entry that memorializes the terminal ruling (or some other disposition) in the case. *That assessment, both here and below, must be made upon review of the entire judgment roll (or record proper),* which consists of "... the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court...." 12 O.S.1981 § 32.1; *Veiser, supra* note 8, 688 P.2d at 800; *Timmons v. Royal Globe Ins. Co.,* Okl., 713 P.2d 589, 591–592 (1985); *Willard v. Kelley,* Okl., 803 P.2d 1124, 1134 (1990); *Dyke, supra* note 10, 861 P.2d at 303 n. 27. For an explanation of how counsel should proceed to secure the incorporation of another action's judgment roll, see *Eckel v. Adair,* Okl., 698 P.2d 921, 924 (1985).

**26.** The parents, who take *no issue* with the existence or the terms of the widow's wrongful-death recovery and of the ancillary distribution order, assail *solely* that adjudication's *effect* as a legal impediment to their direct *ex contractu* action against the insurer. The assumed burden of their position requires them to show that the *bar imposable by these prior adjudications may be avoided because of some infirmity in the process.* Their argument cannot succeed because the sparse record will not support them. *Hamid v. Sew Original,* Okl., 645 P.2d 496, 497 (1982). *See Oxley v. City of Tulsa,* Okl., 794 P.2d 742, 748 (1990); *Hulsey v. Mid–America Preferred Ins. Co.,* Okl., 777 P.2d 932, 936 (1989); *Reeves, supra* note 26, 769 P.2d at 753; *Ferguson v. Ferguson Motor Co.,* Okl., 766 P.2d 335, 338 n. 8 (1988).

## III

### THE PARENTS CANNOT MAINTAIN *THIS* ACTION IF *THEIR* QUEST BE TREATED AS ONE FOR *EX CONTRACTU* RECOVERY UNDER THE UNINSURED/UNDERINSURED MOTORIST COVERAGE

■ The insurer *qua* UM carrier undertakes to provide indemnity for the harm occasioned by one who is either uninsured or underinsured.[27] UM coverage is the insurer's first-party contractual obligation to pay for the tortious acts inflicted on one *"legally entitled to recover* damages from owners or operators of uninsured motor vehicles."[28] The insurer's *ex contractu* liability is hence to be gauged by the delictual accountability of another—that of the uninsured/underinsured tortfeasor.[29]

In order to maintain the claim, the parents in this case must have an *actionable death loss* against the tortfeasor. *They must show themselves legally entitled to recover from the offending under- or uninsured actor.*[30]

The UM insurer's *ex contractu* liability for death-related losses is measured by the regime of damages legally *recovered* or *recoverable* in wrongful death. When this standard is applied to the parents' claim now before us, it is clear the trial judge was correct in giving summary judgment to the insurer. *No wrongful-death damages have been or may be recovered* for these parents' alleged death loss. The tortfeasor's wrongful-death obligation had been adjudicated in the widow's earlier claim. Once the widow's death-claim judgment stood satisfied, there was no longer any actionable loss to be recovered. Her judgment raises an insuperable *res judicata bar* to an *ex contractu* contest over any *additional* loss components.

Legal error may not be presumed from a silent record; it must be affirmatively demonstrated.[31] Appellate courts must presume on review that a trial court's decision is correct; every fact not disputed by the record is to be regarded as supportive of the trial court's judgment.[32] The parents have not met the law's burden by providing a record sufficient to overcome the presumption of correctness that attaches to the nisi prius adjudication. Because they *failed to prove* either (a) some fatal infirmity in the wrongful-death litigation in which they *were explicitly excluded* from distribution or (b) their own next-of-kin status, this action cannot lie[33] as a direct *ex contractu* demand against the UM insurer.

---

27. *Uptegraft v. Home Ins. Co.*, Okl., 662 P.2d 681, 684 (1983).

28. The pertinent terms of 36 O.S.1991 § 3636(B) are:

"B. The policy referred to in subsection (A) of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder *who are legally entitled to recover* damages from owners or operators of uninsured motor vehicles ... because of bodily injury, sickness or disease, including death resulting therefrom...." (Emphasis added.)

*Uptegraft, supra* note 27, 662 P.2d at 685, teaches that the phrase *"legally entitled to recover"* means that the insured needs to show (a) that the uninsured/underinsured motorist bears legal liability for the harmful event and (b) the extent of proximately resulting damage.

29. *Haws, supra* note 14, 503 P.2d at 874; *Hill, supra* note 14, 424 P.2d at 37–38.

30. *Uptegraft, supra* note 27, 662 P.2d at 685.

31. *Hamid, supra* note 26, 645 P.2d at 497. *See Oxley, supra* note 26, 794 P.2d at 748; *Hulsey, supra* note 26, 777 P.2d at 936; *Reeves, supra* note 26, 769 P.2d at 753; *Ferguson, supra* note 26, 766 P.2d at 338 n. 8.

32. *Davidson v. Gregory*, Okl., 780 P.2d 679, 684 n. 17 (1989). *See, e.g., Homeland Realty Co. v. Robison*, 39 Okl. 591, 136 P. 585 (syllabus ¶ 6) (1913); *Cox v. Warford*, 34 Okl. 374, 126 P. 1026, 1027 (1912); *Farmers' & Merchants' Bank of Coweta v. Sharum*, 21 Okl. 863, 97 P. 555, 556 (1908); *Board of Com'rs of D County v. Wright*, 8 Okl. 190, 57 P. 203 (syllabus ¶ 3) (1899).

33. The concept of issue preclusion does not apply unless the party against whom the earlier decision is interposed had "full and fair opportunity" to litigate the critical issue in the earlier case. *Underside, supra* note 8, 645 P.2d at 516. For want of a contrary showing by the record, we must presume that the adverse distribution order the parents seek to avoid is free from facial infirmity. *See* cases cited *supra* note 32.

## IV

## THE PARENTS CANNOT MAINTAIN *THIS* ACTION EVEN IF WE TREATED IT AS A QUEST TO REOPEN THE ANCILLARY POSTRECOVERY DISTRIBUTION PROCEEDING IN THE WRONGFUL–DEATH ACTION

■ The parents seek damages for *their* "grief and loss of companionship" occasioned by the death of the son.[34] Their argument is that (a) § 1053 explicitly allows them this kind of recovery and (b) they may press this claim in breach-of-contract action directly against their UM carrier.

The parents' claim, if it be one for a share in the *postrecovery apportionment,* also must fail. *It is pressed in the wrong lawsuit.* Unless the distribution order to be avoided is facially void,[35] the quest *to reopen the earlier apportionment proceeding* must be made by a direct attack in that case.[36]

In short, if the parents had no notice of the postrecovery ancillary proceeding, or wish to advance some other vitiating infirmity in the process that was their due in that case, their remedy is by proceedings to set aside the extant distribution order.[37] Were we to assume that the parents' quest for distribution may be maintained in this direct *ex contractu* action against the insurer, their claim must nonetheless fail. This is so because the parents (a) *did not join in this action* the necessary parties defendant (the administratrix or widow and the other distributees in the wrongful-death action) and (b) did not show, by some facial vitiating defect, that the earlier distribution order is in fact fatally flawed on the face of the judgment roll in the death action.[38]

## SUMMARY

If the parents' present claim is one for wrongful death, it cannot lie because they had failed to show *the earlier death-action judgment to be is void on the face of the judgment roll.* If this case is the parents' direct *ex contractu* action against the insurer to recover under their own UM coverage, the action must also fail *for want* of (a) an actionable death loss and (b) their critical next-of-kin status. Lastly, if this is a quest to reopen the postrecovery distribution, the claim cannot lie because (a) it was brought in the wrong lawsuit, (b) the necessary parties defendant are absent, and (c) no showing was made that the parents' *exclusion* from the

---

**34.** The wrongful-death statute, 12 O.S.1981 § 1053(B), *supra* note 5, affords this element of damages only to the children of the decedent and to the parents who are next of kin.

**35.** Avoid judgment may be vacated at any time in a collateral as well as a direct attack. 12 O.S. 1981 § 1038. *Norman v. Trison,* Okl., 832 P.2d 6, 9 (1992); *Hough v. Hough,* Okl., 772 P.2d 920, 921 (1989); *Mayhue, supra* note 24, 706 P.2d at 895; *Scoufos v. Fuller,* Okl., 280 P.2d 720, 723 (1955).

**36.** The teaching of *Keel v. MFA Insurance Co.,* Okl., 553 P.2d 153, 158 (1976), that a UM carrier's liability can be litigated in several ways, is not inconsistent with the "one-claim, one-recovery" wrongful-death regime. *This is so because both teachings require that all issues of liability and damages be litigated in one action. Keel* lists four options available to an insured *who has a claim against an uninsured motorist.* The insured may bring an action (1) directly against his UM carrier (without joining the uninsured motorist as a party defendant) and litigate all of the liability and damage issues in that one action; (2) against both the uninsured motorist and the UM carrier as parties defendant and litigate all issues of liability and damages in one action; (3) against the uninsured motorist (without joining the UM carrier as a party defendant) but give "adequate notice" of the filing and pendency of the action to the insurance company so that it may intervene in that suit or take whatever action it deems appropriate; and (4) against the uninsured motorist without notice to the UM carrier.

**37.** It is *not apparent* from the material submitted in this case that the parents had no notice of the distribution hearing in that proceeding. The *entire* judgment roll was not included in the appellate record before us. The absence of the entire judgment roll from this record is fatal to the parents' quest for a declaration that the judgment roll shows a facial vitiating infirmity in the distribution order. *Timmons, supra* note 25, 713 P.2d at 592; *Dyke, supra* 4, 861 P.2d at 302–303.

**38.** *See supra* notes 24 and 25.

earlier distribution *is facially void.* We hence conclude the trial court's summary judgment is free from legal error.

On certiorari previously granted, the Court of Appeals' opinion is vacated and the trial court's summary judgment is affirmed.

LAVENDER, V.C.J., and SIMMS, HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

HODGES, C.J., and KAUGER and WATT, JJ., concur in result.