2005 OK 73

Wilhelm MURG, Jr., individually and as Personal Representative of the Estate of Virginia Murg, deceased, Plaintiff/Appellant,

v.

BARNSDALL NURSING HOME, an Oklahoma corporation, Defendant/Appellee.

No. 99,367.

Supreme Court of Oklahoma.

Oct. 18, 2005.

Gerald J. Lovoi, Tulsa, OK, attorney for Appellant Wilhelm Murg, Jr., Individually and as Personal Representative of the Estate of Virginia Murg, deceased.

W. Michael Hill, E. Anthony Mareshie, Secrest, Hill & Butler, Tulsa, OK, attorneys for Appellee Barnsdall Nursing Home.

WINCHESTER, V.C.J.

¶ 1 The dispositive issue presented for our review is whether the letters of special administration of appellant, Wilhelm Murg, Jr., Individually and as Personal Representative of the Estate of Virginia Murg, Deceased, (hereinafter "Murg, Jr.,") properly were issued, or whether his appointment was void *ab initio* (99,701) (*Murg I*). Our holding regarding appellant's negligence claim against appellee, Barnsdall Nursing Home, (hereinafter "Barnsdall") (99,367) (Murg II) hinges upon our determination of the validity of Murg, Jr.'s appointment as Special Personal Representative. If we determine his appointment was valid, then he has the requisite standing to pursue a wrongful death negligence claim against Barnsdall. If we find that his appointment was void *ab initio*, then the negligence claim necessarily fails, for lack of standing. We shall treat these two matters as companion cases, for disposition by the instant opinion. The record before the Court establishes the following relevant facts.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Decedent, Virginia Murg, died intestate on or about August 17, 2001. Prior to her demise, Mrs. Murg was a resident of Barnsdall Nursing Home from March 2001 until May 2001. While a resident of Barnsdall Nursing Home, the record establishes that decedent suffered from stage IV bedsores. In addition, the record shows that decedent was treated for dehydration and malnourishment, and for injuries sustained when she fell from her wheel chair. Her husband, Wilhelm Murg, Sr., (Murg, Sr.,) and her son, Wilhelm Murg, Jr., (Murg, Jr.,) appellant herein, survived her. The record contains numerous Minute Orders from the probate court. We reference only those that are pertinent to the issues before us.

¶ 3 A Court Minute file-stamped October 9, 2001, reflects that: 1) decedent died intestate; 2) Murg, Sr., and Murg, Jr., were "all of her heirs at law"; and 3) Murg, Sr., was appointed administrator to serve without bond. A subsequent Court Minute, dated May 8, 2002, and file-stamped May 9, 2002, reflects Murg, Sr., and Murg, Jr., were present at a hearing on the final accounting and that Murg, Jr., had filed an Objection to Final Account on March 28, 2002, regarding an issue unrelated to those herein.

¶ 4 On June 13, 2002, Murg, Jr., filed his Petition For Appointment of Special Personal Representative with the District Court of Osage County, stating therein that 12 O.S. 2001, § 1054 [1] required the appointment of a personal representative to pursue a wrongful death claim, with the court to apportion any and all proceeds from the claim between the surviving spouse and the surviving son. A Final Decree and Decree of Distribution, file-stamped June 19, 2002, but handwritten in the body of said decree as coming on for hearing on the 9th day of May, 2002, names Murg, Sr., and Murg, Jr., as the only heirs at law. It discharges and releases Murg, Sr., as personal representative, and cancels and sets aside his letters testamentary. At this time, Murg, Jr.'s application for Appointment of Special Personal Representative had been on file six days, according to the Osage County Court Clerk file stamps on these documents.

¶ 5 The record contains correspondence from the Oklahoma State Department of Health dated May 9, 2002, that references a Complaint Supplemental received against Barnsdall on September 5, 2001, and investigated November 1, 2001, through December 14, 2001. This correspondence contains certain findings, including a conclusion that the complaint [2] was verified and that Barnsdall

"... failed to assess and treat the resident's pressure sores. F–325 was cited

---

1. 12 O.S.2001, § 1054. **Action for death—Who may sue**

"In all cases where the residence of the party whose death has been caused as set forth in the preceding section of this article (Title 12, § 1053) is at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been ap-

pointed, the action provided in the said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

2. NATURE OF COMPLAINT:

"1. Facility neglect. Named resident died because of bedsores. Dehydrated because of bedsores. Resident died on 09/04/01."

regarding the facility failure to ensure that a resident maintains acceptable parameters of nutrition status."

Murg, Sr.'s affidavit, dated March 26, 2003, and contained in the record before us, states his belief that pursuing a lawsuit against Barnsdall "is not in the interest of Ruth's estate."

¶ 6 By Court Minute dated and file-stamped July 25, 2002, the court appointed Murg, Jr., as special administrator, over the objection of his father, Murg, Sr. Bond was set in the amount of $20,000.00. The formal order memorializing this minute order, dated July 25, 2002, and file-stamped August 1, 2002, states that Murg, Jr.

"... is hereby appointed special personal representative to pursue a civil action against the Barnsdall Nursing Home and all culpable entities and persons on behalf of the Estate of Virginia Ruth Murg, deceased. The Natural Son, Wilhelm Louis Murg, Jr., is ordered to post a bond in the amount of $20,000.00."

¶ 7 On September 10, 2002, Murg, Sr., filed a Motion to Reset Hearing, because the United States Department of the Interior refused to approve the final account, based upon issues irrelevant to the instant matter. On December 27, 2002, Murg, Sr., filed a motion to modify the Final Decree, also premised upon matters not before us. A subsequent Court Minute Order filed December 30, 2002, resolved this dispute, and a subsequent order filed January 10, 2003, formalized its resolution. Neither is pertinent to the issues before us, but both evidence the fact that the decedent's estate was reopened during the course of these hearings, which occurred after the appointment of Murg, Jr., as Special Personal Representative. We also note that these proceedings were precipitated by Murg, Sr., and thus any contention that the estate was closed, never to be re-opened, in May 2002, lacks merit.

¶ 8 Almost nine months after the July 25, 2002, appointment of Murg, Jr., as special representative to pursue the action against Barnsdall, on April, 2, 2003, Barnsdall filed a Non–Party Entry of Appearance in this probate matter for the sole purpose of objecting to and seeking to vacate Murg, Jr.'s appoint-ment. Barnsdall asserted itself to be an "interested party", with no citation of authority to support this allegation in its brief filed with the probate court on April 9, 2003. It contended that, should Murg, Jr., prevail in the wrongful death action against it, Barnsdall would be "a potential debtor of the estate" and that it could be a potential "creditor of the estate" if it were awarded damages from either potential counterclaims, (none of which Barnsdall references) or normal attorney fees/costs incident to litigation. Barnsdall contended that Murg, Sr.'s decision not to pursue the litigation precluded the appointment of his son for the express purpose of doing so. It also referenced a protective order issued against Murg, Jr., that was filed in the Osage Tribal District Court on April 27, 1999. We determine this document to be irrelevant to the matter before us.

¶ 9 The probate court issued Special Letters of Administration to Murg, Jr., filed on April 14, 2003, almost nine months after the Court Minute dated and file-stamped July 25, 2002, that appointed him as special administrator over his father's objection. A bond from The Ohio Casualty Insurance Company also was filed April 14, 2003, in the amount of $25,000.00. A Minute Form filed August 4, 2003, reflects the hearing on Barnsdall's Motion to Vacate Special Letters of Administration. The decision was memorialized in an order dated August 4, 2003, and file-stamped August 6, 2003, wherein the probate court held in pertinent part that Barnsdall was an interested party in the probate court case "because of the appointment of Mr. Wilhelm Murg, Jr., of which it complains who sued it in the civil case." This particular order vacated Murg, Jr.'s Letters of Special Administration and the order of appointment.

¶ 10 Murg, Jr., timely filed a wrongful death negligence action against Barnsdall on September 27, 2002, both individually and as Special Representative of the decedent's estate. Barnsdall filed a motion to dismiss the wrongful death action filed by Murg, Jr., in his capacity as Special Personal Representative. (99,367)(Murg II) Barnsdall argued therein that Murg, Jr., as Special Personal Representative, lacked standing to bring the action, because a personal representative

previously had been appointed, and had declined to file a negligence action against it. Barnsdall failed to provide any authority that would tend to support its contention that it had standing to contest the appointment of Murg, Jr.

¶ 11 The probate court ultimately issued an order that vacated Murg Jr.'s letters of special administration (99,701) (*Murg I*) on the basis that it had lacked authority to make the appointment. As a result of that order, the trial court in the pending negligence action then entered an order that granted summary judgment in favor of Barnsdall on Murg Jr.'s wrongful death negligence claim, on the basis that Murg Jr. lacked standing, because the probate court had vacated his letters of special administration and presumably, his father was the only one with standing to file such a lawsuit. (99,367)(Murg II).

## STANDARD OF REVIEW

 ¶ 12 The order of the probate court in *Murg I* (99,701) involves a legal issue, to-wit: whether the probate court had the authority to appoint Murg, Jr., as Special Personal Representative. "An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Manley v. Brown*, 1999 OK 79, ¶ 22, n. 30, 989 P.2d 448, 456, n. 30. Accordingly, our standard of review regarding the probate court's order in *Murg I* is *de novo*.

 ¶ 13 The trial court's order in Murg II (99,367) granted summary judgment to Barnsdall on a legal issue, to-wit: that Murg, Jr., lacked standing to file a wrongful death negligence action because his letters of special administration were void *ab initio*. Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Daugherty v. Farmers Coop. Ass'n*, 1984 OK 72, ¶ 5, 689 P.2d 947, 949; *Crockett v. McKenzie*, 1994 OK 3, ¶ 3, 867 P.2d 463, 464. "[T]he inquiry on appeal concerning the propriety of the entry of summary judgment is limited to potential controversies concerning any issue raised by the pleadings." *Wabaunsee v. Harris*, 1980 OK 52, ¶ 9, 610 P.2d

782, 785. An order that grants summary relief disposes of legal issues. Therefore, on appeal, the review we conduct is *de novo*. *Brown v. Nicholson*, 1997 OK 32, ¶ 5 n. 1, 935 P.2d 319, 321 n. 1; *Manley v. Brown*, 1999 OK 79, ¶ 22, n. 30, 989 P.2d at 456 n. 30. Accordingly, our standard of review regarding the trial court's order in Murg II also is *de novo*.

### Murg I (99,701)

## AUTHORITY OF PROBATE COURT TO ISSUE LETTERS OF SPECIAL ADMINISTRATION

 ¶ 14 Probate courts are creatures of the law and are limited in their jurisdiction. *Rust v. Gillespie*, 1923 OK 346, ¶ 14, 216 P. 480, 482 (1923). In the instant case, the probate court ultimately determined it was without jurisdiction to appoint Murg, Jr., as Special Personal Representative, because it had no jurisdiction to act in the probate matter upon filing Murg, Sr.'s discharge as Personal Representative. As such, the court reasoned that the Special Personal Representative appointment was void *ab initio*. We disagree. We also note that the probate was reopened, by virtue of motions contained in the record that were filed by Murg, Sr., through the fall and winter of 2002, long after the appointment of Murg, Jr., as Special Personal Representative. In addition, the probate court's very appointment of Murg, Jr., served to reopen the probate estate, as well.

### Continued Existence of Probate Estate

 ¶ 15 At the time of Murg, Sr.'s discharge as Personal Representative, a viable and potentially substantial claim existed against Barnsdall, a claim that represented a potential debt to the decedent's estate. The probate estate was reopened by the appointment of Murg, Jr., as Special Representative. The record reflects that Murg, Sr., was present at the hearing thereon, and represented by counsel. The Final Decree and Decree of Distribution was dated May 9, 2002. Correspondence from the Oklahoma State Department of Health that contains findings from the investigation into the decedent's death

also is dated May 9, 2002. These findings support a wrongful death action against Barnsdall, and were received after the date of the Final Decree. As such, the wrongful death claim against Barnsdall constitutes property discovered after the final settlement of the estate, under 58 O.S.2001, § 692.[3] Further evidence that the probate estate was reopened includes Murg, Sr.'s filing of documents for a rehearing on the final decree and for further distribution of funds for such items as funeral expenses, months after the final decree and after the appointment of Murg, Jr. The Final Decree and Decree of Distribution document does not reference a potential tort claim against Barnsdall. Murg, Jr., states in his petition for letters that if appointed, he will distribute the proceeds of the wrongful death lawsuit, if any, between himself and his father, the two being the only heirs at law. We note that Barnsdall cites no authority for its proposition that Murg, Sr., was the only proper party with standing to pursue a wrongful death action, or that he was the only heir entitled to decide whether the estate would pursue such an action. At the time of Murg, Sr.'s discharge as Personal Representative, a viable and potentially substantial claim existed against Barnsdall, a claim that represented a potential debt to the decedent's estate, thereby making it necessary for the court appoint the decedent's son as Special Personal Representative to administer it, or in this particular instance, to file the tort claim. It is undisputed that Murg, Jr., is one of decedent's heirs, as her biological child. Barnsdall cites no authority for its proposition that Murg, Sr., was the only proper party with standing to pursue a wrongful death action, or that he was the only heir entitled to decide whether the estate would pursue such an action. Children, whether minors or adults, are heirs at law. As such, they have an interest in the resolution of estate claims that create a case

or controversy sufficient to satisfy the constitutional requirements of injury, causation and redressability. Title 12 O.S.2001, §§ 1053 and 1054, do not preclude an action by Murg, Jr., individually, as next of kin, for wrongful death. The hierarchy of potential plaintiffs set forth in these sections exists merely to preclude concurrent causes of action filed by the potential parties enumerated therein. We observed in *Ouellette v. State Farm Mut. Auto. Ins. Co.*, 1994 OK 79, ¶ 11, 918 P.2d 1363, 1367: "There can be only one wrongful-death claim and one recovery." Since the surviving spouse, Murg, Sr., declined to file an action against Barnsdall, then §§ 1053 and 1054 allow Murg, Jr., to do so, as next of kin[4], in the absence of his father as a plaintiff. *See, e.g., Hamilton By and Through Hamilton v. Vaden*, 1986 OK 36, ¶¶ 9–12; ¶ 19, 721 P.2d 412, pp. 417–419. We stated in *Hamilton* that, " . . . the potential absurdity of this result is readily apparent when viewed in the context of our observation that a guardian *ad litem*, or next friend, cannot waive or otherwise prejudice the minor's substantial rights," [regarding the filing of a wrongful death claim for the death of the minor's mother], *Id.* at ¶ 19, p. 418. Similarly, in the case at bar, to allow the surviving spouse's refusal to file a wrongful death action, (whether he be refusing individually or in his capacity as personal representative), to waive or otherwise prejudice the adult son's substantial rights would result in an absurdity. Therefore, we hold that Murg, Jr., has standing, individually, as next of kin under 12 O.S.2001, §§ 1053 and 1054, to bring a wrongful death action against Barnsdall for his mother's death. Indeed, the Tenth Circuit, interpreting Oklahoma law, has so held. *See, e.g., Plain v. Murphy Family Farms*, 296 F.3d 975. 979–980 (10th Cir. [Okla.] 2002)(wherein the Court held that, "As decedent's heirs, the children have a unique interest (not unlike

---

3. 58 O.S.2001, § 692. Property discovered after final settlement
 The final settlement of an estate, as hereinbefore provided, shall not prevent a subsequent issue of letters testamentary or of administration, or of administration with the will annexed if other property of the estate discovered, or if it become necessary or proper for any cause that letters should be again issued.

4. We defined "next of kin" in the context of the wrongful death statutes in *Ouellette v. State Farm Mut. Auto. Ins. Co.*, 1994 OK 79, ¶ 10, 918 P.2d 1363, 1366–1367, to include, "all who would be entitled to share in the distribution of the personal property of the deceased."

unnamed members of a class) under Oklahoma law in the distribution of the wrongful death damage award. Oklahoma law provides that the children are entitled to recover for 'mental pain and anguish suffered by the decedent,' 'pecuniary loss to the survivors,' and the 'grief and loss of companionship of the children.' 12 Okla. Stat. § 1053(B)." That Court also opined, "... the children easily satisfy constitutional standing requirements. As heirs of the decedent, the children have an interest in the resolution of estate claims 'that creates a 'case or controversy' sufficient to satisfy the constitutional requirements of injury, causation, and redressability.' *Devlin v. Scardelletti*, 536 U.S. 1, 6–7, 122 S.Ct. 2005, 2009, 153 L.Ed.2d 27 (2002)".

¶ 16 Murg, Jr., asserts his own legal rights. He is within the limited class of interested parties, and raises claims that fall within the zone of interests protected by state law. Murg, Jr.'s interest in the potential wrongful death action represents a portion of the probate estate that did not cease to exist merely because Murg, Sr., decided not to pursue a wrongful death action against Barnsdall. Indeed, Murg, Sr., cannot choose to extinguish or decline to pursue an independent claim that his son, as an heir, possesses. Thus, there is a probate estate that continues to exist, and over which Murg, Jr., appropriately was appointed Special Personal Representative.[5] Additionally, Murg, Jr., was entitled to file the wrongful death action against Barnsdall individually, as next of kin, which he did. In fact, we have held that the next of kin of the deceased may be substituted as the real party in interest, even after judgment is rendered in a wrongful death action. *See, e.g., Stanolind Oil and Gas Co. v. Jamison*, 1950 OK 210, ¶ 12, 227 P.2d 404.[6]

### Conflict of Interest Between Murg, Sr., and Murg, Jr.

¶ 17 A conflict of interest arose between Murg, Sr., and Murg, Jr., when the former, while serving in his capacity as personal representative of decedent's estate, declined to file a wrongful death action against Barnsdall. This conflict of interest is substantiated by the matter before us, in which the nursing home, Barnsdall, unilaterally attempts to challenge the appointment of Murg, Jr., to avoid the lawsuit against it, thus confirming the need for Murg, Jr.'s appointment as Special Personal Representative to pursue the estate's claim and preserve his interest therein. *See, Matter of Estate of Bearden*, 1990 OK CIV APP 96, 800 P.2d 1086 (wherein that court addressed a conflict of interest that may arise for persons in the capacity of personal representative). Such a conflict existed for Murg, Sr., when he elected not to pursue the wrongful death action, resulting in a conflict of interest with his son, the other heir and potential beneficiary of the proceeds, if any, from such a lawsuit.

### Duty of Personal Representative to Preserve the Estate

¶ 18 In interpreting the wrongful death statute that predates our current applicable statutes, we held that the proceeds of the recovery in a wrongful death action did not constitute assets of the estate. *Baltimore American Ins. Co. v. Cannon*, 1937 OK 572, 73 P.2d 167. While we decline to disturb our holding therein, we determine that in the instant matter, the potential wrongful death claim against Barnsdall constitutes a potential debt owed by the nursing home to the decedent's estate, under the limited facts of this case, in which the only surviving heirs at law, to whom the estate passes, are the decedent's surviving spouse and biological

---

**5.** We note that adult children of deceased nursing home residents frequently file the actions against the nursing homes. *See, e.g., Sosnicki v. Chateau Living Ctr.*, 2005 WL 1861924 (July 21, 2005), *Beverly Enterprises–Florida, Inc. v. McVey*, (739 So.2d 646)(wherein decedent's son, as personal representative of the estate, filed the action against the nursing home).

**6.** While the *Stanolind Oil* case was decided under the wrongful death statute that predates our

current statute, this principle and the rationale behind it remain unchanged by the language and applicability of the current wrongful death statutes. In another case, the decedent's mother could have been substituted as party plaintiff but instead chose to perfect the appointment of the administrator so that he was then qualified to act as her representative. *Dierks v. Walsh*, 1946 OK 8, 165 P.2d 354.

adult child. Murg, Sr., may have had a prior right to appointment as personal representative. However, his refusal to pursue a wrongful death action against Barnsdall affected a substantial right and interest that his son, as the remaining heir, possessed in the estate. A personal representative has a duty to preserve the estate. Indeed, we have upheld removal of an executor not only on the basis of a conflict of interest, but also on the basis that a co-executor took no action to recover a debt. *See, Matter of Estate of Walker,* 1985 OK 2, 695 P.2d 1. Murg, Sr.'s refusal to fulfill his duty to pursue a viable wrongful death action, the proceeds of which would constitute a debt owed to the estate, also created the necessity for the appointment of Murg, Jr., as Special Personal Representative.

### Statutory Guidelines for Appointment of Special Administrators

¶ 19 The statutes concerning appointment of special administrators are found in 58 O.S.2001, §§ 211-217. Title 58 O.S. 2001, § 211 [7] provides for the appointment of a special administrator when an administrator or executor is removed. The Final Decree and Decree of Distribution discharged and released Murg, Sr., as personal representative, and cancelled and set aside his letters testamentary. At this time, Murg, Jr.'s application for Appointment of Special Personal Representative had been on file six days, according to the Osage County Court Clerk file stamps on these documents. For purposes of 58 O.S.2001, § 211, we find sufficient evidence in the record to support Murg, Jr.'s contention that the appointment of a special personal representative occurred after removal of Murg, Sr., and thus was appropriate under the applicable statute. His appointment reopened the estate, and subsequent filings by Murg, Sr., to distribute estate funds for payment of funeral expenses and to settle a dispute with the Department of the Interior provide further evidence that the estate was reopened.

### Barnsdall's Standing to Challenge Murg, Jr.'s Appointment

¶ 20 We now address Barnsdall's standing to challenge Murg, Jr.'s appointment. To have standing to contest letters of administration, a person must have an interest in the property a testator owned at his death, thereby classified as an "interested party." *Mayweather v. Wallace,* 1945 OK 148, ¶ 15, 159 P.2d 529, 530; *In re Estate of Geller,* 1999 OK CIV APP 45, ¶ 11, 980 P.2d 665, 668 (1999). A secured creditor is not an "interested party" in a probate proceeding, and has no standing. *See, Matter of Estate of Dilley,* 1996 OK CIV APP 64, ¶ 9, 919 P.2d 458, 460 (1996)(wherein the court held that LEC Capital Corporation was not a party "interested" in the probate proceeding, and thus lacked standing to prosecute a petition). If a secured creditor is not an "interested party", then a defendant in a wrongful death action, that alleges it may be a *"potential* creditor" or a *"potential* debtor" of the estate fails to meet the requirements of a party "interested" in the probate proceeding. In *Dilley,* the petition concerned an accounting, whereas in the instant case, the petition concerns removal of the son as Special Personal Representative. Since a secured creditor is not an "interested party" and lacks standing to petition an accounting, *a fortiori,* a defendant in a wrongful death lawsuit is not an "interested party" and lacks standing to petition for the decedent's son's removal as Special Personal Representative.

¶ 21 Those entitled to contest a petition praying for letters of administration include those entitled to notice of hearing for the same, pursuant to 58 O.S.2001, § 128 [8], and

---

**7.** 58 O.S.2001, § 211 **Special administrators appointed, when**

"When there is delay in granting letters testamentary, or of administration, from any cause, or when such letters are granted irregularly, or no sufficient bond is filed as required, or when no application is made for such letters, or when an administrator or executor dies, or is suspended, suspended partially, or removed, the judge of

the district court may appoint a special administrator to collect and take charge of the estate of the decedent, in whatever county or counties the same may be found, and to exercise such other powers as may be necessary for the preservation of the estate."

**8.** 58 O.S.Supp.2001, § 128 **Notice of hearing**

"A. When a petition praying for letters of administration is filed, the judge of the court must

any "interested person" as provided in 58 O.S.2001, § 129 [9], and in accordance with the provisions of 58 O.S.2001, § 130 [10]. We note that Section 129 sets out two bases for an "interested person" to contest a petition, to-wit: 1) on the grounds of the applicant's incompetence, or 2) to assert his own rights and pray that letters be issued to himself. Barnsdall fails to contest the petition on either basis, and is not an "interested person" in the decedent's probate. We have held that persons allowed to challenge a petition for letters of administration include the guardian of the decedent's minor child. *Sparks v. Steele*, 1972 OK 127, 501 P.2d 1106. In *Sparks*, the guardian of the decedent's minor child argued that unless she were appointed, a wrongful death action arising from the father's death would be tried, or settled, without due consideration for the rights and interests of her ward, a minor and sole heir-at-law of the decedent. Similarly, in the case at bar, unless Murg, Jr., is appointed, the wrongful death action arising from his mother's death not only could be tried or settled without due consideration for his rights and interests, but in fact was declined by Murg, Sr. In the instant matter, it is the defendant, Barnsdall, a nursing home, that comes before us, asking that we hold Murg, Jr.'s appointment void *ab initio*. In *Sparks*, the wrongful death lawsuit's defendant was a railroad. The defendant railroad therein lacked standing to protest the appointment of the decedent's father and the subsequent appointment of decedent's minor child's guardian, to avoid the wrongful death action against it. Barnsdall, as a defendant in the wrongful death action, has no greater standing in the case at bar than the defendant railroad in *Sparks*. Indeed, neither potential wrongful death lawsuit defendant has standing to contest the appointment of a personal representative to pursue the estate's claim against it.

¶ 22 By statute, as set forth hereinabove, if one contests the petition, he may assert his own rights to the administration. However, Barnsdall has no rights to the administration, and cannot contest the petition as an interested person, under the applicable statute. Further, insofar as Sections 129 and 130 are concerned, the statutory language contained therein needs no interpretation. Murg, Jr.'s right to appointment is higher in priority to that of any person save his father, who was discharged and released, his letters testamentary set aside and cancelled by order of the probate court.[11] As the decedent's son,

set a day for hearing the same and cause notice thereof to be given, containing the name of the decedent, the name of the applicant for letters, and the day on which the application will be heard.

"B. If the names and addresses of all heirs of the decedent are known to the petitioner and are set out in the petition, the notice must be given, as provided in Section 34 of this title, by mailing a copy of the same to each of the heirs of the deceased with the postage thereon prepaid at least ten (10) days before the day set for the hearing.

"C. If the name or address of one or more heirs of the decedent is not known to the petitioner, notice of the hearing of the petition shall be given by mailing, as above provided, and by publishing the same one time in a legal newspaper in the county at least ten (10) days before the day set for the hearing.

"D. If the petition asks for the appointment of some person entitled under the law to appointment, and there shall accompany such petition a waiver of all persons having a prior right to appointment or if the applicant has a prior right of appointment, then no notice shall be given and the court shall proceed without delay to hear such petition."

9. 58 O.S.2001, § 129 **Contest of Petition—Notice**

"Any person interested may contest the petition by filing written opposition thereto, on the ground of the incompetency of the applicant, or may, at any time within thirty (30) days after an administrator has been appointed, assert his own rights to the administration and pray that letters be issued to himself. In the latter case the contestant must file his petition [asserting his own rights to the administration] in the court. The court thereof shall set a day for hearing the same and the contestant shall give written notice by mail, postage prepaid, to the known heirs and the original petitioner or administrator, if the appointment has been made, of said contest, and the time and place set for hearing the same, at least five (5) days before said hearing."

10. 58 O.S.2001, 130 **Hearing of the petition—Order**

"On the hearing, it being first proved that notice has been given as herein required, the court must hear the allegations and proofs of the parties, and order the issuing of letters of administration to the party best entitled thereto."

11. 58 O.S.2001, § 122 **Persons entitled to letters of administration**

"Administration of the estate of a person, dying intestate must be granted to one or more of the

Murg, Jr., has a pecuniary interest in the estate that is protected by statute. His appointment was appropriate.

¶ 23 In the matter before us, Barnsdall is not a proper party to challenge Murg, Jr.'s appointment. It is not an interested party as a statutory heir of the decedent, under 58 O.S.2001, § 213, nor is it eligible to petition for letters in its own right under 58 O.S.2001, § 122. A third party with no connection to the deceased is not an interested party, for purposes of contesting the appointment of an administrator of a deceased's estate. Barnsdall fails to cite any authority for its proposition that it has standing to contest a petition praying for letters of administration. To allow Barnsdall to contest and defeat Murg, Jr.'s appointment as Special Personal Representative would be tantamount to allowing Barnsdall unilaterally to absolve itself of any and all potential liability for the decedent's demise, without ever addressing the merits of the wrongful death action. Such a result is contrary to the express intent set out by the Legislature in the statutes that list the heirs who may contest such appointments, as well as the statutes pertaining to the appointment of a special personal representative and what constitutes an estate, for purposes of such appointment. Murg, Jr., is an heir at law to the decedent's estate. He has a beneficial interest therein, and to allow a third party corporate entity to protest his appointment circumvents not only the letter of the law, but its spirit, as well. We hold that Barnsdall is not an "interested party" in the probate of the decedent's estate, and further hold that Barnsdall has no standing to contest the appointment of Murg, Jr., as Special Personal Representative. The potential wrongful death action on behalf of decedent's estate constitutes a potential debt owed by Barnsdall to the decedent's estate, necessitating the need for a special personal repre-

sentative to pursue it. The estate was reopened for all intents and purposes upon Murg, Jr.'s appointment. The probate court's intention to keep the estate open is evidenced in its continued involvement therein, as reflected in a subsequent rehearing and redistribution of assets to pay funeral expenses months after the final decree. The appointment of decedent's son, Murg, Jr., as special personal representative, was valid.

## Murg II (99,367)

### AUTHORITY OF MURG, JR., AS SPR, TO FILE WRONGFUL DEATH NEGLIGENCE ACTION

¶ 24 Since we hold that Murg, Jr.'s appointment as Special Personal Representative (99,701)(*Murg I*) was valid, we hold that, both individually and also as Special Personal Representative, Murg, Jr., possesses the requisite standing to pursue a wrongful death negligence claim against Barnsdall.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINIONS VACATED; ORDER OF THE TRIAL COURT REVERSED; ORDER OF THE PROBATE COURT REVERSED.**

CONCUR: WATT, C.J., LAVENDER, EDMONDSON, TAYLOR, COLBERT, JJ.

CONCUR IN RESULT: OPALA, KAUGER, JJ.

DISSENT: HARGRAVE, J.

persons hereinafter mentioned, and they are respectively entitled thereto in the following order:
1. The surviving husband or wife, or some competent person whom he or she may request to have appointed.
2. The children.
3. The father or mother.
4. The brothers or sisters.
5. The grandchildren.

6. The next of kin entitled to share in the distribution of the estate.
7. The creditors.
8. Any person legally competent.
If the decedent was a member of a partnership at the time of his decease, the surviving partner must in no case be appointed administrator of his estate."